MIDLAND TOWNSHIP v STATE BOUNDARY COMMISSION

MIDLAND TOWNSHIP v MIDLAND COUNTY BOARD OF
COMMISSIONERS

NOVI TOWNSHIP v STATE BOUNDARY COMMISSION

BRIGHTON TOWNSHIP v STATE BOUNDARY COMMISSION

Docket Nos. 57720, 57732, 58223, 58236, 58242–58245. Argued June 7,
1977 (Calendar Nos. 1–6).—Decided October 24, 1977. Rehear-
ing denied 402 Mich 956.

These appeals challenge the constitutionality of legislation which
enables the State Boundary Commission to order township
territory to be annexed to an adjoining city.

Midland Township and Robert B. Chatterton, a township supervi-
sor, brought an action against the State Boundary Commission
to set aside an annexation of township land to the City of
Midland. The Ingham Circuit Court, Donald L. Reisig, J.,
granted summary judgment for the plaintiffs and found the
legislation unconstitutional. The Midland Township plaintiffs
also brought an action against the Midland County Board of
Commissioners and others to restrain an annexation election
called by the commissioners. The Midland Circuit Court, John
X. Theiler, J., granted judgment for the defendants. The City of
Midland intervened as a defendant in each case. The Court of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 73 Am Jur 2d, Statutes § 100 *et seq.*

[3] 73 Am Jur 2d, Statutes § 119 *et seq.*

[5] 73 Am Jur 2d, Statutes § 130 *et seq.*

[6] 73 Am Jur 2d, Statutes § 426.

[7] 73 Am Jur 2d, Statutes § 392 *et seq.*

[8, 15] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 50, 51.

[9, 10] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 63..

[11, 17] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 70 *et seq.*

[12] 2 Am Jur 2d, Administrative Law § 633.

[13, 14] 2 Am Jur 2d, Administrative Law § 610 *et seq.*

[16, 18] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 55 *et seq.*

Appeals, V. J. Brennan, P. J., and D. E. Holbrook and M. F. Cavanagh, JJ., affirmed the consolidated appeals (Docket Nos. 19154–19156, 20255). The plaintiffs and the State Boundary Commission appeal.

Novi Township, and Brighton Township and Muriel Beurmann, brought complaints challenging the approval by the State Boundary Commission of annexation of lands within the townships to the cities of Novi and Brighton, respectively. Owners of real property intervened as plaintiffs and defendants, and the cities of Novi and Brighton intervened as defendants in the suits. The Ingham Circuit Court, Jack W. Warren and Donald L. Reisig, JJ., granted judgments for the plaintiff townships and found the legislation unconstitutional. The Court of Appeals, McGregor, P. J., and T. M. Burns and N. J. Kaufman, JJ., affirmed in part and reversed in part (Docket Nos. 20227, 20228, 20268, 20410). The State Boundary Commission, the City of Novi, and the City of Brighton appeal. *Held:*

1. The title of the home rule cities act is sufficient under the Title-Body Clause of the Constitution to encompass provisions for change of city boundaries by annexation. An act providing for the functioning of a city covers many subjects which might have been dealt with in separate acts because the object of the act is necessarily broad-ranging and comprehensive. It is not consequential for purposes of the Title-Body Clause which agency is charged with implementation of a provision of the home rule cities act as long as the provision is germane to functioning of city government. Nor is it important that city annexation procedures might have been enacted in legislation creating the State Boundary Commission.

2. The Constitution does not require that the title of the home rule cities act, which by amending its annexation procedures amended by implication the 1968 act creating the State Boundary Commission, reflect the implied amendment or that the title of the boundary commission act reflect the implied amendment. The concept of implied amendment would be nullified if express amendment of the body or title of an impliedly amended statute were required. Additional powers and duties are often conferred by statute on public officials and agencies who derive their principal responsibility from other statutory provisions or from the Constitution without specific reference in the entitlement of the statute conferring additional powers and duties that the body of the statute provides. The Constitution does not require, nor would a useful purpose be served by, re-enacting and republishing the portions of §§ 6,

8, 8a, and 14 of the home rule cities act which were superseded by the 1970 amendment of § 9 of the act.

3. No city, village, township or person has any vested right or legally protected interest in the boundaries of a local governmental unit. The Legislature is free to change those boundaries at will. Legislation providing for a referendum where more than 100 persons reside in the territory to be annexed and denying a referendum where 100 persons or fewer reside in the territory does not violate the Equal Protection Clause because it provides a means appropriate to the resolution of disagreements concerning annexation of territory to a city. The challenged classification was not unreasonable and tends to prevent abuses which may occur if a small group of persons have the absolute power to prevent an annexation economically advantageous to other persons or to the community.

4. The challenged legislation delegates a power of the Legislature which is essentially political and does not involve any vested right or legally protected interest. The decision will be a value judgment based on the particular facts and circumstances of the annexation under consideration. It would unduly inhibit the exercise both of the Legislature's prerogative to delegate its power and the function of the State Boundary Commission to require greater particularity in the statutory criteria for deciding annexation questions than those in this legislation.

5. An annexation proceeding is not a "contested case" within the meaning of the Administrative Procedures Act, which was designed to provide procedural protection where a personal right, duty or privilege is at stake by an opportunity for an evidentiary hearing. Affording the public a right to be heard on an annexation decision at a public hearing before the State Boundary Commission does not create an implied substantive personal right in the decision. The judiciary, to avoid the risk of being drawn into an essentially political question in which no vested right or legally protected interest is involved, ought to be especially circumspect in reviewing determinations of the State Boundary Commission.

6. The State Boundary Commission may regard a particular statutory criterion to be of decisive importance, outweighing all other criteria. The commission's decision to "award the tax base" of a site for a proposed nuclear power plant to the City of Midland is supported by the record, is not arbitrary, and is consistent with the statutory criteria and the standard of reasonableness.

7. The State Boundary Commission may revise the boundaries described in a petition for annexation to include any land

which might originally have been included in the petition or to exclude land which was described in the petition, and there is no requirement that the parcels annexed be contiguous to each other, although any territory annexed to a city must adjoin the city. The commission applied an erroneous principle when it ruled that it could not revise the boundaries, as requested by Novi Township, to include a noncontiguous parcel, Brookland Farms Subdivision. The Novi Township petition is remanded so that the State Boundary Commission may consider whether to include the Brookland Farms Subdivision in the annexation.

8. The motive or purpose of a city in drawing the proposed boundaries so that the area contains fewer than 100 residents and thus the annexation will not be subject to referendum is not material, nor is the motive or purpose of a township in requesting a revision of boundaries so that the area has more than 100 residents; the question is whether the boundaries and the annexation are reasonable. The Legislature may reasonably determine that territory containing relatively few or no residents should be subject to annexation and that there is need for a classification based on population to preclude a referendum in such a case and to allow it where the territory to be annexed is more populous. The State Boundary Commission decisions approving the Midland, Novi and Brighton annexations with boundaries as proposed by the cities were not violative of the statutory standard, reasonableness.

9. The hearing before the State Boundary Commission was not a "public meeting" within the meaning of the former public meetings act.

10. Land which has been disconnected from a village under the farmland disconnection act may properly be annexed to a city. Disconnection is not necessarily permanent; new facts might arise which could render a disconnection order absolute. Exercise by the commission of the power to annex disconnected land does not constitute a collateral attack on the judgment of the circuit court disconnecting the land.

The decisions of the Court of Appeals are reversed.

64 Mich App 700; 236 NW2d 551 (1975) reversed.

67 Mich App 596; 242 NW2d 449 (1976) reversed.

1. MUNICIPAL CORPORATIONS—STATUTES—HOME RULE CITIES ACT— ANNEXATION—CONSTITUTIONAL LAW—TITLE-BODY CLAUSE.

The title of the home rule cities act is sufficient under the Title-Body Clause of the Constitution to encompass provisions for change of city boundaries by annexation of territory (Const 1963, art 4, § 24; 1970 PA 219; MCL 117.9; MSA 5.2088).

2. STATUTES—CONSTITUTIONAL LAW—TITLE-BODY CLAUSE.

The title of an act need not serve as an index of all that the act contains; the requirement of the Title-Body Clause of the Constitution is met if an act centers on one main general object or purpose which the title comprehensively declares, although in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary or incidental to that general purpose (Const 1963, art 4, § 24).

3. MUNICIPAL CORPORATIONS—STATUTES—HOME RULE CITIES ACT— CONSTITUTIONAL LAW—TITLE-BODY CLAUSE.

An act providing for the functioning of a city covers many subjects which might have been dealt with in separate acts; the object of such an act is necessarily broad-ranging and comprehensive, and includes anything germane to the functioning of cities (Const 1963, art 4, § 24; MCL 78.1 *et seq.;* MSA 5.1511 *et seq.).*

4. MUNICIPAL CORPORATIONS—STATUTES—CONSTITUTIONAL LAW—TITLE-BODY CLAUSE.

It is not consequential for purposes of the Title-Body Clause of the Constitution whether a city, county or state official or agency is charged by an act with implementation of a provision of the act so long as the provision is germane to the functioning of city government where the act centers on the functioning of city government and its title so indicates (Const 1963, art 4, § 24).

5. STATUTES—CONSTITUTIONAL LAW—TITLE-BODY CLAUSE—AMENDMENTS.

The Constitution does not require that the title of an act which amends another act by implication or the title of the act so amended reflect the implied amendment (Const 1963, art 4, § 24).

6. MUNICIPAL CORPORATIONS—STATUTES—HOME RULE CITIES ACT— STATE BOUNDARY COMMISSION—CONSTITUTIONAL LAW—REPUBLISHING CLAUSE.

The Constitution does not require reenacting and republishing portions of a statute which are repealed by implication or reenacting and republishing portions of the statute which remain viable; where an amendment to the home rule cities act, by its terms, does not change or dispense with any requirement of the act which created the State Boundary Commission but makes certain sections of the home rule cities act not applicable to certain annexations approved by the State Boundary Commission, it is not necessary to excise the portions of the

home rule cities act which are superseded or to reenact and republish the parts of the boundary commission act which are amended by implication (Const 1963, art 4, § 25; 1970 PA 219; MCL 117.9; MSA 5.2088).

7. STATUTES—CONSTITUTIONAL LAW—AMENDMENTS.

Ambiguities and constructional issues posed by a failure of the Legislature to repeal all laws concerning an entire subject when enacting amendatory legislation do not affect the validity of the legislation because of an asserted conflict between the provisions of different acts or sections of the same act on that subject.

8. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—BOUNDARIES—
    ANNEXATION.

No city, village, township or person has any vested right or legally protected interest in the boundaries of such governmental unit; a state's legislative body may at its pleasure expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation in the absolute discretion of the state, in conformity with the state Constitution, unrestrained by any provision of the Constitution of the United States.

9. MUNICIPAL CORPORATIONS—ANNEXATION—REFERENDUM—EQUAL
    PROTECTION.

A section of the home rule cities act which provides for a referendum where more than 100 persons reside in a territory to be annexed to a city and denies a referendum where 100 persons or fewer reside in the territory does not violate the Equal Protection Clause because it was not unreasonable and tends to prevent the abuses which may occur if a few persons have absolute power to prevent an annexation economically advantageous to other persons or to the community and thereby bears a substantial relation to the object of the legislation by providing a means to resolve disagreements concerning annexation (Const 1963, art 1, § 2; 1970 PA 219; MCL 117.9; MSA 5.2088).

10. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COM-
    MISSION—DELEGATION.

Reasonableness, determined on the basis of statutorily enumerated criteria, is a sufficient guideline for the exercise of State Boundary Commission discretion in annexation proceedings; it would unduly inhibit the exercise both of the Legislature's prerogative to delegate the power to decide the political consid-

erations and the function of the State Boundary Commission to·
require greater particularity of the criteria (MCL 123.1008;
MSA 5.2242[8]).

11. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COM-
MISSION—ADMINISTRATIVE LAW.

An annexation proceeding before the State Boundary Commission
is not a "contested case" within the meaning of the Administra-
tive Procedures Act; affording the public an opportunity to be
heard on an annexation decision does not create a substantive
personal right in the decision which requires procedural protec-
tion under the Administrative Procedures Act (MCL 24.203[3],
123.1004; MSA 3.560[103], 5.2242[4]).

12. ADMINISTRATIVE LAW—JUDICIAL REVIEW.

Judicial review of an administrative decision must be undertaken
with due deference to administrative expertise without invad-
ing the province of exclusive administrative fact-finding by
displacing a state agency's choice between two reasonably
differing views (Const 1963, art 6, § 28; MCL 24.306; MSA
3.560[206]).

13. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COM-
MISSION—APPEAL AND ERROR.

The constitutional provision concerning judicial review of admin-
istrative action does not limit the proceedings of the State
Boundary Commission in a annexation decision, which does not
involve personal or private rights in the boundaries of cities,
villages or townships (Const 1963, art 6, § 28).

14. MUNICIPAL CORPORATIONS—HOME RULE CITIES ACT—ANNEXATION
—STATE BOUNDARY COMMISSION.

A decision of the State Boundary Commission to "award the tax
base" of the site of a proposed nuclear power plant by annexa-
tion of township territory to the City of Midland is supported
by the record, is not arbitrary, and is consistent with the
statutory criteria for making annexation decisions and the
standard of reasonableness (MCL 123.1008; MSA 5.2242[8]).

15. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COM-
MISSION.

The State Boundary Commission may revise the boundaries set
forth in an annexation petition to include any land which
might originally have been included in the petition, which need
not be adjacent to the land being annexed, although it must
adjoin the city, or to exclude land which was included (MCL
123.1010; MSA 5.2242[10]).

16. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COMMISSION.

    The motive or purpose of a city or township in drawing the proposed boundaries for an annexation petition is not material to a decision by the State Boundary Commission if the boundaries as drawn or revised by the commission are reasonable.

17. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COMMISSION—PUBLIC MEETINGS ACT.

    The procedures of the public meetings act are not applicable to a hearing before the State Boundary Commission on a petition for annexation (MCL 12.251; MSA 4.1800[1]).

18. MUNICIPAL CORPORATIONS—ANNEXATION—STATE BOUNDARY COMMISSION—FARMLAND DISCONNECTION ACT.

    Land disconnected from a village by court order pursuant to the farmland disconnection act is subject to annexation by a city pursuant to an amendment of the home rule cities act; exercise by the State Boundary Commission of the power to annex disconnected land does not constitute a collateral attack on a judgment of the circuit court disconnecting the land (MCL 117.9, 123.31; MSA 5.2088, 5.3561).

*Bauckham, Reed, Lang, Schaefer & Travis* for Midland Township, Novi Township and Brighton Township.

*William D. Sinclair* for Midland Township and Robert B. Chatterton.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone* and *Craig Atchinson,* Assistants Attorney General, for State Boundary Commission.

*David S. DeWitt,* City Attorney, for City of Midland and Kenneth W. Lybolt.

*Louis C. Andrews, Jr.,* for City of Midland and City of Brighton.

*Edward G. Durance* for Midland County Board of Commissioners and Ben Penner.

*Lampert & Fried* (by *David M. Fried* and *Gary E. Levitt)* for City of Novi.

*Charles S. Toy* for Brighton Township.

*John R. Brennan,* City Attorney, for City of Brighton.

LEVIN, J. The State Boundary Commission was created to consider petitions for the incorporation and consolidation of cities and villages. Its powers were subsequently enlarged to include petitions for annexation of territory to a city.

In these actions, consolidated on appeal, town-. ships from which the commission ordered territory detached and annexed to adjoining cities and persons residing in those townships challenge the constitutionality of the enabling legislation.

Court of Appeals panels, affirming judgments of the circuit courts, held the enabling legislation to be violative of the Title-Object and Reenact-Publish Clauses of the Constitution, but disallowed the other constitutional, procedural and substantive challenges of the townships. We reverse.

The enabling legislation is constitutional.[1] We agree with the Court of Appeals that the other

---

[1] In an apparent response to challenges to the 1968 enabling legislation, the title of that act and a new § 11a were added and other amendments were made by 1972 PA 362. The amended title provides:

"An act to create a state boundary commission; to prescribe its powers and duties; to provide for municipal incorporation, consolidation and annexation; and to repeal certain acts and parts of acts."

Section 11a provides:

"The commission shall have jurisdiction over petitions or resolutions for annexation as provided in section 9 of Act No. 279 of the Public Acts of 1909, as amended." MCLA 123.1011a; MSA 5.2242(11a).

Our disposition makes it unnecessary to consider the townships' contentions that these amendments do not cure the constitutional infirmity of the 1970 amendment as it relates to the 1968 act and the home rule cities act, and that such amendments can only operate prospectively from the January 9, 1973 effective date of 1972 PA 362.

challenges should be denied except that the commission's adoption of an erroneous principle in the Novi annexation requires remand to it of the petition in that case.

After the circuit court had set aside the Midland annexation ordered by the commission, the annexation procedures of prior law were invoked. Midland Township then challenged annexation under those procedures; the circuit court rejected that challenge and the Court of Appeals affirmed. The issues raised in that challenge need not be further considered because the enabling legislation (here held to be constitutional) by its terms supersedes the procedures of prior law.

## I

Before creation of the State Boundary Commission, the procedures for the incorporation, consolidation or alteration of boundaries of cities were set forth in the home rule cities act.[2] By enactment separate from that act, the commission was created in 1968 with authority limited to incorporation and consolidation of cities and villages.[3] The powers of the commission were extended to annexations by a 1970 amendment of the annexation procedures of the home rule cities act.[4]

The 1970 amendment is entitled: "AN ACT to amend section 9 of [the home rule cities act], entitled, as amended 'An act to provide for the incorporation of cities and for revising and amending their charters' ".

In holding the 1970 amendment violative of the Title-Object Clause, the Court of Appeals reasoned

[2] 1909 PA 279; MCLA 117.1 *et seq.;* MSA 5.2071 *et seq.*

[3] 1968 PA 191; MCLA 123.1001 *et seq.;* MSA 5.2242(1) *et seq.*

[4] 1970 PA 219; MCLA 117.9; MSA 5.2088.

that while the title of the home rule cities act "is sufficient to encompass the annexation authority of cities" it was not "sufficient to encompass the subject of the annexation jurisdiction of an entirely separate state agency".[5]

## A

The Title-Object Clause provides:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title." Const 1963, art 4, § 24.

The question whether the title of the home rule cities act is sufficient to encompass annexation procedures was resolved in *Village of Kingsford v Cudlip*, 258 Mich 144; 241 NW 893 (1932), where this Court considered the question in the context of annexation of township territory to a village under a village governance act.[6] The Court observed that the title of the home rule cities act

---

[5] *Midland Twp v State Boundary Commission*, 64 Mich App 700, 718; 236 NW2d 551 (1975).

The other panel of the Court of Appeals, in the Novi and Brighton appeals, reasoned similarly:

"1970 PA 219 'embraced' as its object the removal of annexation authority from the counties and granting such authority to the SBC.

\* \* \*

"1970 PA 219 did indeed amend § 9 of the HRCA. But it went beyond 'amending' and actually conferred authority on the SBC. There is nothing in the title to either the home rule cities act or 1970 PA 219 to advise anyone that the powers of the SBC were being rather dramatically enlarged. See *Midland Twp v State Boundary Commission*, 64 Mich App 700; 236 NW2d 551 (1975)." *Novi Twp v State Boundary Commission*, 67 Mich App 596, 599–600; 242 NW2d 449 (1976).

[6] 1909 PA 278; MCLA 78.1 *et seq.;* MSA 5.1511 *et seq.*

and the village act were identical—except that one speaks of the incorporation of "cities" and the other of "villages"—and declared:

"Both of these acts have been many times before this court, and, so far as we have been able to discover, this is the first time the sufficiency of the present titles has been assailed. Both the legislature and the courts have treated these titles as sufficient to sustain the provisions for change of boundaries. The necessity of such changes from time to time is apparent, and in our opinion the power conferred upon the legislature by the Constitution 'to provide by a general law for the incorporation' may fairly be said to include the change of boundaries when needed." *Id,* 151–152.[7]

*Village of Kingsford* was followed in *Hall v Calhoun County Board of Supervisors,* 373 Mich 642, 647; 130 NW2d 414 (1964), approving annexation pursuant to the procedures of the home rule cities act of one city by another against a contention that "this would amount to a disincorporation of the annexed city, and the title of the [home rule cities act] has reference to the incorporation only":

"We have said that the act's title is broad enough to encompass annexation, *Village of Kingsford v Cudlip,* 258 Mich 144, 151, 152, and this being so we are not prepared to say that it is not broad enough to encompass annexation of a city. We are committed to a liberal interpretation of the constitutional provision concerning titles of legislative enactments." *Id,* p 648.

---

[7] As originally enacted, the title of the village act and of the home rule cities act began: "An act to provide for the incorporation of" villages/cities and concluded "and for changing their boundaries". By amendments in 1913 (1913 PA 95 as to villages, 1913 PA 5 as to cities), "and for changing their boundaries" was replaced with "and for revising and amending their charters". The 1913 amendments did not, however, change the annexation provisions of either act. The Court rejected a contention that the change in the title rendered invalid formerly valid annexation provisions.

Acknowledging that *Village of Kingsford* and *Hall* establish that the title of the home rule cities act is sufficient to encompass annexation procedures, the townships contend that those cases have been superseded by *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628; 67 ALR3d 1079 (1972), where this Court declared that if it were intended by the building authority act,[8] as amended, "as defendants claim, to permit taxation without limitation to pay fixed rentals, then [the body of that act] exceeds the scope of the title", because the title of that act limits the body to "the issuance of revenue bonds by such authorities". *Id,* pp 257, 358.

The Title-Object issue in *Alan* was different from the issue here presented of the sufficiency of the title. The issue in *Alan* was whether the body of the act exceeded the scope of the title, "speaking," as expressed in *People v Stanton,* 400 Mich 192, 195; 253 NW2d 650 (1977), "more broadly than its restrictively-speaking title". Similarly, see *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971).

Where the issue is the sufficiency of the notice provided by the title, it is "established that the title need not serve as an index of all that the act contains". *People v Milton,* 393 Mich 234, 246–247; 224 NW2d 266 (1974).

"An abridgment of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, *if the act centers to one main general object or purpose which the title comprehensively declares,* though in general terms, and if provisions in the body of the act not

[8] 1948 (1st Ex Sess) PA 31; MCLA 123.951 *et seq.;* MSA 5.301(1) *et seq.* Title amended by 1973 PA 110.

directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met." *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917) (emphasis supplied).

As with codifications,[9] an act providing for the functioning of a city covers many subjects which might have been dealt with in separate acts. The object of such an act is necessarily broad-ranging and comprehensive. "The home rule act and other acts providing for the incorporation of cities and other units of local government have been interpreted as having as their object anything germane to their functioning." *Detroit Board of Street Railway Commissioners v Wayne County,* 18 Mich App 614, 623; 171 NW2d 669 (1969).

## B

Whether a provision is germane depends on its relationship to the object of the act, not who is charged with implementing the provision. Although an act centers on the functioning of city government and its title so indicates, it is not consequential for purposes of the Title-Object Clause whether a city, county or state official or agency is charged by the act with participation in implementation of a provision of the act as long as the provision to be implemented is germane to the functioning of city government.

Nor is it of any importance that city annexation procedures, before and after the 1970 amendment set forth in the home rule cities act, might have been located in the enabling act creating the com-

[9] *See Regents of the University of Michigan v Pray,* 264 Mich 693, 697; 251 NW 348 (1933); *People v Milton,* 393 Mich 234, 248; 224 NW2d 266 (1974).

mission. Paraphrasing *People v Milton, supra,* p 248, the correct question is not whether the Legislature might have included provisions concerning city annexation procedures in the 1968 act but whether such provisions and procedures are germane to the purpose of the home rule cities act. There is " 'no constitutional requirement that the legislature do a tidy job in legislating. * * * The constitutional requirement is satisfied if the bits and pieces so enacted are embraced in the object expressed in the title of the amendatory act and the act being amended' ". *Id,* p 242.

The further contention of the townships that the title of the 1970 amendment should have indicated that it was "effectually amending" the 1968 enabling act and that the title of that act should similarly have been amended is predicated on the erroneous premise that the 1970 amendment of the home rule cities act amended the 1968 act. Although the powers and duties of the commission were enlarged by the 1970 amendment, that was accomplished by amendment of the home rule cities act without amendment of the 1968 act which created the commission.

The Constitution does not require that the title of an act which amends another act by implication or the title of the act so amended reflect the amendment so implied; manifestly the concept of implied amendment would be nullified if express amendment of the body or title of an impliedly amended statute were required.

Perusal of the contents of the home rule cities act indicates that a narrow construction of this constitutional limitation and of the title of that act might render a number of its provisions unconstitutional.

It is, similarly, apparent on examination of the

statutes generally[10] that additional powers and duties are often conferred on public officials and agencies who derive their principal responsibility from other statutory provisions or from the Constitution without specific reference in the entitlement of the statute conferring such additional powers and duties that the body of the statute provides.

The Court of Appeals erred in holding that the title of an act concerning the governance of a city must directly indicate that the body of the act confers authority on a state agency.

On the authority of *Village of Kingsford* and *Hall,* we hold that procedures for the annexation of territory to a city are germane to the functioning of a city and that the procedures provided for in the 1970 amendment are embraced in the object expressed in the titles of the 1970 amendment and of the home rule cities act.

II

The townships contend that the "failure of the Legislature to reenact and publish at length §§ 6, 8, 8a and 14 of the Home Rule Cities Act * * * which were amended by implication" and to re-

---

[10] The following are examples of statutes which confer duties upon officers or agencies not mentioned in the title who derive their principal powers from other statutes; it is also noteworthy that the statutes were enacted without reenactment and publication of the statutes conferring the powers *(see* part II):

1967 PA 288; MCLA 560.101 *et seq.;* MSA 26.430(101) *et seq.,* the Subdivision Control Act of 1967, confers duties upon county platting boards, state, city and county health departments, county drain commissions, the departments of state highways and treasury, the water resources commission, county road commissions, state conservation department, state treasurer and other state and county administrative agencies.

1972 PA 346, MCLA 281.951 *et seq.;* MSA 11.475(1) *et seq.,* the Inland Lakes and Streams Act of 1972, confers duties upon the Department of Natural Resources and the Natural Resources Commission.

enact and republish the "portions of the state boundary commission act amended by implication" by the 1970 amendment is violative of the Re-enact-Publish Clause, which provides:

"No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length." Const 1963, art 4, § 25.

The Court of Appeals, agreeing with the townships, ruled that the Legislature had unconstitutionally attempted to amend the 1968 act by putting in the home rule cities act specific words to amend the 1968 act without reenacting and republishing the 1968 act "contrary to *Mok [v Detroit Building & Savings Ass'n No 4*, 30 Mich 511 (1875)] and *Alan*".[11]

### A

In *Mok,* this Court held unconstitutional an 1869 act providing for the incorporation of building and savings associations by reference to an 1855 act (consisting of 12 lines including its title) for the formation of corporations for building and leasing houses and other tenements which in turn referred for its substance to an 1853 act authorizing the formation of corporations for mining, smelting or manufacturing purposes. The Court declared that the 1869 act incorporated the 1853 act by reference and *expressly* changed the provisions so incorporated: Section 4 of the 1853 act required that the articles of association state the

---

[11] *Midland Twp v State Boundary Commission, supra,* p 720; the other panel of the Court of Appeals declared "that the Legislature attempted to amend the [1968 act] by putting into the home rule cities act specific words to amend the boundary commission act". *Novi Twp v State Boundary Commission, supra,* p 600.

amount of capital stock actually paid in;[12] the 1869 act provided that the articles required by § 3 of that act "need not state the amount of capital stock actually paid in".[13]

The 1869 act added to the requirements of §§ 4 and 5 of the 1853 act by express reference to those sections.[14]

The Court declared that those provisions and references were express amendments of provisions of the act incorporated by reference and were violative of the constitutional limitation:

"Amendments of statutes by implication, we have held, are not forbidden by [the constitution]: *People [ex rel Drake] v Mahaney,* 13 Mich 481 [1865]; *Underwood v McDuffee,* 15 Mich 361 [1867]. But this is not a case of that nature, as *all the alterations* we have reason to suppose the legislature designed to make in the act of 1853, to adapt it to the purposes of the act of 1869, *are made in express terms.*

\* \* \*

"While the act of 1853 is left untouched as to the organizations contemplated by its provisions, it is, for the purposes of building and savings associations, altered in most important particulars in disregard of the constitutional requirement. The fourth and fifth sections are *expressly* amended without re-enacting them in full, and perhaps the same should be said of the eleventh, while the others are capable of being made available only by treating the act as revised to meet the exigencies of the case." *Mok v Detroit Building & Savings Ass'n No 4, supra,* pp 522, 529 (emphasis supplied).

---

[12] 1853 PA 41; 1857 CL 1802.

[13] 1869 PA 152, § 1; 1871 CL 2822.

[14] 1869 PA 152, §§ 4, 5; 1871 CL 2825, 2826.

"Sec. 4. The articles of association shall state, in addition to the requirements of section four of said chapter sixty-three \* \* \* ."

"Sec. 5. In addition to the facts required to be reported by section five, of said chapter sixty-three, the said corporation shall report \* \* \* ."

In *Alan v Wayne County, supra,* this Court considered a provision of the building authority act[15] authorizing an authority to issue self-liquidating bonds in accordance with and subject to the provisions of the Revenue Bond Act.[16] The Court declared that an act that amended the building authority act, "if it purported to substitute full faith and credit for the normal revenue from the property as the source of payment for the authorized bonds," would offend the Reenact-Publish Clause because it did not reenact and publish at length any part of the Revenue Bond Act as well as the building authority act so amended. "This is because [the building authority act] incorporates [a provision of the Revenue Bond Act] by reference * * * and therefore under *Mok, supra,* anything [in the building authority act] or any act to amend [the building authority act] that purports 'to dispense with something required by that Act [the Revenue Bond Act], and to make some changes'[17] offends Const 1963, art 4, § 25." *Alan, supra,* pp 265–266.

The Reenact-Publish question in *Alan* arose from the incorporation of a provision of the Revenue Bond Act into the building authority act and amending the provision so incorporated which had not been reenacted and republished.

In the instant cases, the 1970 amendment of the home rule cities act, while incorporating by reference provisions of the 1968 act, does not "dispense with" or "change" any provision of the 1968 act.

---

[15] *See* fn 8, *supra.*

[16] 1933 PA 94; MCLA 141.101 *et seq;* MSA 5.2731 *et seq.*

[17] "But while the act of 1869 referred parties in this circuitous manner to that of 1853 for the requirements in organization, it undertook at the same time to dispense with some things required by that act, and to make some changes." *Mok v Detroit Building & Savings Ass'n No 4,* 30 Mich 511, 521 (1875).

The 1970 amendment provides that the commission, in acting on petitions for annexation, has "the same powers and duties" and is to proceed "in accordance with and subject to" the 1968 act.[18] Further, the 1970 amendment provides that in the event of a "conflict between the provisions of this act" and the 1968 act, *the provisions of the 1968 act "shall govern".*[19] By its terms, the 1970 amendment makes no change or dispensation of any requirement of the 1968 act.

While the 1970 amendment provides for resolution of conflicts between it and the 1968 act—the incorporated act, the 1968 act, "shall govern"—the procedures to be followed appear to be straightforward and uncomplicated. The commission, established under the 1968 act, is to process petitions

[18] "Except as provided in subsections (1) and (8), a petition or resolution for annexation of territory shall be filed in the Lansing office of the state boundary commission. The commission, after determining the validity of the petition or resolution, shall hold a public hearing in or reasonably near the area proposed for annexation. The commission in processing and approving, denying or revising a petition or resolution for annexation shall have the same powers and duties and be in accordance with and subject to the provisions of Act No. 191 of the Public Acts of 1968, relating to petitions which propose incorporations." MCLA 117.9(2); MSA 5.2088(2).

[19] "In the event of a conflict between the provisions of this act and Act No. 191 of the Public Acts of 1968, being sections 123.1001 to 123.1020 of the Complied Laws of 1948, regarding an incorporation or consolidation, the provisions of Act No. 191 of the Public Acts of 1968 shall govern. The district to be affected by every such proposed incorporation, consolidation or change of boundaries shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed. However, when a territory is proposed to be incorporated as a city only the residents of the territory to be incorporated shall vote on the question of incorporation. When a petition signed by the state by the appropriate agency designated by the state administrative board which holds the record legal title to the entire area of the land in the territory adjacent to the city to be annexed, is filed with the governing body of the city and with the township board of the township in which such territory is situated, such annexation may be accomplished by the affirmative majority vote of the governing body of such city and the approval of the township board of such township." MCLA 117.9(1); MSA 5.2088(1).

for annexation in accordance with the provisions of the 1968 act "relating to petitions which propose incorporations". The 1970 amendment, additionally, supplements the provisions relating to incorporations of the 1968 act with provisions peculiar to annexation. The 1970 amendment does not, expressly or otherwise, dispense with or change the provisions of the 1968 act incorporated into the home rule cities act; in contrast with *Mok,* there is no express amendment of the 1968 act.

## B

The 1970 amendment provides that the provisions of §§ 8 and 8a of the home rule cities act "shall not be applicable" to petitions or resolutions filed with the commission, that the provisions of § 14 of the home rule cities act "shall not be applicable" to certain annexations approved by the commission except as in the 1970 amendment provided, and that from the effective date of the 1970 amendment and so long as the 1968 act is in effect "annexation of territory from a township or village to a home rule city shall be as provided in this section and no other means of annexation shall be effective".[20]

In *People ex rel Drake v Mahaney,* 13 Mich 481, 496 (1865), the act before this Court had "an amendatory effect by implication, and by its last section repeals all inconsistent acts".[21] The act repealed specific sections of certain acts and "all acts and parts of acts inconsistent with the provisions of this act". Rejecting the contention that the act violated the Reenact-Publish Clause, this Court said:

---

[20] MCLA 117.9(9)–117.9(11); MSA 5.2088(9)–5.2088(11).
[21] 1865 PA 78, § 38.

"We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the ₒvarious laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title." *Id,* pp 496–497.

Sections 6, 8, 8a, 9 and 14 appear *seriatim* in the home rule cities act. It is not uncommon for one section of an act to modify, expressly or by implication, another section of the same act. Any amendment of a section of an act may affect other sections of the same act (or indeed of another act) which are not amended, but it has never been thought necessary on that account to reenact the entire act (or other act).

On the same principle that makes it unnecessary to enumerate "all acts and parts of acts inconsistent" *(Mahaney, supra)* with the provision of a superseding act, there was no need to excise the portions of §§ 6, 8, 8a and 14 superseded by the 1970 amendment of § 9.

The Constitution does not require, nor would a useful purpose be served by reenacting and republishing the defunct portions of §§ 6, 8, 8a and 14;

the Constitution does not require a useless gesture. Nor does it require that the defunct portions be excised from those sections and the viable portions reenacted and republished. *People ex rel Drake v Mahaney, supra; Mok v Detroit Building & Savings Ass'n No 4, supra; Alan v Wayne County, supra.*

While this non-express method of legislating may be "confusing" to some and appear to be "lazy", legislation cannot on that ground be invalidated.[22]

The townships further assert that there are a number of ambiguities and constructional issues posed by the failure of the Legislature to repeal all the laws concerning incorporation, consolidation and annexation and to start afresh with a comprehensive enactment covering the entire subject matter. Experience teaches that ambiguities and constructional difficulties are inevitable however carefully the Legislature proceeds. Those difficulties do not rise to constitutional dimensions affecting the validity of legislation because they are posed in terms of asserted conflict between the provisions of different acts or sections of the same act as a result of an amending act. If legislation could so easily be overturned, the claims of confusion, lazy legislation and conflict between sections and acts would be an increasing source of litigation, burden and embarrassment to the courts, the Legislature and the public.

### III

The townships and individual plaintiffs additionally contend:

A. The 1968 act denies equal protection of the

---

[22] *See* fn 10, *supra.*

laws to persons residing in an area containing 100 persons or fewer, who are denied a referendum on a commission order although a referendum is required where more than 100 persons reside in the area;

B. The 1968 act does not provide adequate standards;

C. Proceedings before the commission are a "contested case" within the meaning of the Administrative Procedures Act, and the provisions of that act were not followed;

D. The cities gerrymandered the boundaries to avoid a referendum, and a review of the record in light of the statutory criteria demonstrates that the evidence does not "substantially" support the commission's rulings or its determinations that the annexations were reasonable and should be approved.[23]

These contentions ignore the unique nature of annexation proceedings. No city, village, township or person has any vested right or legally protected interest in the boundaries of such governmental units. The Legislature is free to change city, village and township boundaries at will. This was settled for Federal constitutional purposes in *Hunter v Pittsburgh,* 207 US 161, 178–179; 28 S Ct 40; 52 L Ed 151 (1907), and the principles there established have been observed in subsequent litigation in the courts of this and other states. See *Village of Kingsford v Cudlip, supra,* p 148. Similarly, see *Lansing School District v State Board of Education,* 367 Mich 591; 116 NW2d 866 (1962);

---

[23] The townships further contend that in the Midland case the commission failed to base its decision on the criteria of the 1968 act; in the Brighton case the commission's refusal to revise the boundaries to include the balance of the so-called BUGA area was not supported by the evidence, contrary to Const 1963, art 6, § 28; and in the Novi case the commission's refusal to revise the boundaries consolidating the two Novi petitions was contrary to law.

*The Detroit Edison Co v East China Twp School Dist No 3,* 247 F Supp 296 (ED Mich, 1965), aff'd 378 F2d 225 (CA 6, 1967); 56 Am Jur 2d, Municipal Corporations, § 50, p 108 and § 57, p 113.

In *Hunter* the City of Pittsburgh had annexed the City of Allegheny. The statute provided for a referendum with the votes of both cities being aggregated. Pittsburgh, larger than Allegheny, voted in favor of annexation and Allegheny voted against it. Allegheny residents claimed that the procedures violated the Due Process Clause. The Court responded that the Legislature could have constitutionally changed the boundaries without an election:

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do

as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it." *Id,* pp 178–179.

## A. EQUAL PROTECTION

In the instant annexations fewer than 100 persons resided in the territories to be annexed.

The townships and individual plaintiffs, acknowledging the principles enunciated in *Hunter,* assert that while the Legislature may provide for annexation without an election it is violative of the Equal Protection Clause to provide for a referendum where more than 100 persons reside in the territory to be annexed and deny a referendum where 100 persons or fewer reside in the territory.

In *Detroit Edison Co v East China Twp School Dist No 3, supra,* where it was contended that a school district should have proceeded by consolidation (subject to referendum in the annexing and annexed districts) rather than annexation (not subject to referendum in the annexing district), the district court rejected an equal protection challenge. The Court of Appeals affirmed based on the abstention doctrine, adding that the district court was correct on the merits. Similarly see *Lansing School Dist v State Board of Education, supra,* p 599.

We are of the opinion that the challenged classi-

fication bears a substantial relation to the object of the legislation:[24] providing a means appropriate to the resolution of disagreements concerning annexation of territory to a city.[25]

Some territory annexed will be sparsely populated or unpopulated while other territory will be more heavily populated. The challenged classification, responsive to that factual difference, tends to prevent venal abuses which there is reason to believe may occur if few persons (or a small group of persons) have absolute power to prevent an annexation economically advantageous to other persons or the community at large.[26] See *Weber v Thousand Oaks City Council,* 9 Cal 3d 950; 109 Cal Rptr 553; 513 P2d 601 (1973), sustaining against an equal protection challenge a classification providing for a referendum if the area has more than 12 resident registered votes but dispensing with a referendum where there are fewer voters. It was not violative of the Equal Protection Clause to draw a line, and the line drawn (at 100) was not unreasonable.

---

[24] *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975).

[25] In so holding we do not reach the city contention that the Equal Protection Clause does not apply to an annexation.

[26] If more than 100 persons reside in the territory to be annexed and a petition containing the signatures of at least 25% of the registered voters residing in that territory, in the annexing city, or in the balance of the township, is filed, the commission is required to order a referendum on the question of annexation to be held in each area for which a valid petition is filed. If a majority of the voters voting on the question in each area in which a referendum is held, voting separately, approves the annexation, the annexation becomes effective, otherwise it does not take effect. MCLA 117.9(5); MSA 5.2088(5).

The challenged classification is based on the number of persons residing in the area, not the number of voters. The number of registered voters in the area to be annexed will perforce be considerably fewer than 100 and the number voting in an election is likely to be far fewer than the number registered to vote; a majority of those voting may be as few as 20 or even fewer.

## B. STANDARDS

The 1968 act, as incorporated in the home rule cities act by the 1970 amendment,[27] provides for a public hearing at which the Commission shall consider the "reasonableness" of the proposed annexation based upon the "criteria" set forth in § 9 of the 1968 act:

"Criteria to be considered by the commission in arriving at a determination shall be:

"(a) Population; population density; land area and land uses; assessed valuation; topography, natural boundaries and drainage basins; the past and probable future urban growth, including population increase and business, commercial and industrial development in the area. Comparative data for the incorporating municipality, and the remaining portion of the unit from which the area will be detached shall be considered.

"(b) Need for organized community services; the present cost and adequacy of governmental services in the area to be incorporated; the probable future needs for services; the practicability of supplying such services in the area to be incorporated; the probable effect of the proposed incorporation and of alternative courses of action on the cost and adequacy of services in the area to be incorporated and on the remaining portion of the unit from which the area will be detached; the probable increase in taxes in the area to be incorporated in relation to the benefits expected to accrue from incorporation; and the financial ability of the incorporating municipality to maintain urban type services in the area.

---

[27] "The commission shall review proposed incorporations taking into consideration the criteria established by section 9. * * * [T]he commission shall hold a public hearing at some convenient place in the area proposed to be incorporated, at which public hearing the reasonableness of the proposed incorporation based upon the criteria established in this act shall be considered. * * * ." 1968 PA 191; MCLA 123.1008; MSA 5.2242(8).

1970 PA 219. *See* fn 18, *supra,* for text of MCLA 117.9(2); MSA 5.2088(2).

"(c) The general effect upon the entire community of the proposed action; and the relationship of the proposed action to any established city, village, township, county or regional land use plan." 1968 PA 191; MCLA 123.1009; MSA 5.2242(9).

In *State Highway Commission v Vanderkloot,* 392 Mich 159, 166; 220 NW2d 416 (1974), this Court held "that the standard 'necessity' in the context of the highway condemnation act is a sufficient standard and a constitutional delegation of authority". We similarly conclude that "reasonableness," determined based on the statutorily enumerated criteria, is a sufficient guideline for the exercise of commission discretion.[28]

In this context it is again relevant that the power here delegated does not involve any vested right or legally protected interest. We judge the adequacy of the criteria and standard with that in mind.[29] The annexation question is essentially political, and political considerations cannot be avoided whether the power is exercised by the Legislature itself or by an authority to which the power is delegated. The ultimate decision will be a value judgment based on the particular facts and circumstances of the annexation under consideration. It would unduly inhibit both the exercise of the Legislature's prerogative to delegate the power to decide on annexations and the function of the commission to require greater particularity in the explication of criteria or standards.

---

[28] In *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956), where the Court indicated that "the standards prescribed for guidance [should be] as reasonably precise as the subject matter requires or permits," no standard had been prescribed. *See Florka v Detroit,* 369 Mich 568, 581; 120 NW2d 797 (1963).

[29] Our conclusion makes it unnecessary to readdress the non-delegation/standards doctrine. *See People v Fields (On Rehearing),* 391 Mich 206, 224; 216 NW2d 51 (1974) (LEVIN, J., dissenting); *People v Peters,* 397 Mich 360, 368; 244 NW2d 898 (1976).

## C. CONTESTED CASE

The townships contend that the procedures for contested cases of the Administrative Procedures Act of 1969 apply to commission proceedings and that those procedures were not followed in these annexation proceedings.[30] That act provides:

" 'Contested case' means a proceeding, including but not limited to rate-making, price-fixing and licensing, in which a determination of the *legal rights,* duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. When a hearing is held before an agency and an appeal from its decision is taken to another agency, the hearing and the appeal are deemed to be a continuous proceeding as though before a single agency." 1969 PA 306; MCLA 24.203(3); MSA 3.560(103)(3) (emphasis supplied).[31]

We have already expressed our conclusion, based on the *Hunter* principle, that no governmental

[30] The 1968 act provides (MCLA 123.1004; MSA 5.2242[4]) for a public hearing and requires the state members of the commission to make rules and regulations and prescribe procedures, including rules for public hearings; such rules and regulations are required to be promulgated in accordance with the administrative procedures acts, 1943 PA 88, MCLA 24.71 *et seq.;* MSA 3.560(7) *et seq.* and 1952 PA 197, MCLA 24.101 *et seq.;* MSA 3.560(21.1) *et seq.* The 1968 act further provides (MCLA 123.1018; MSA 5.2242[18]) that every final decision of the commission shall be subject to judicial review in a manner prescribed in the 1952 act. The 1952 act was superseded by the Administrative Procedures Act of 1969, 1969 PA 306; MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.*

Subsequent to the instant annexation hearings the commission promulgated general rules which seek to secure the right to a public hearing provided by the 1968 act (1974 AACS, R 123.1 *et seq.).*

[31] "Contested case" was defined in the 1952 Administrative Procedures Act, extant when the 1968 act was enacted as follows:

"(3) 'Contested case' means a proceeding before an agency in which the legal rights, duties or privileges of a specific party or specific parties are required by law or constitutional right to be determined after an opportunity for an agency hearing." MCLA 24.101; MSA 3.560(21.1).

authority or person has any legal right in the boundaries of a city, village or township. An annexation proceeding is not a "contested case" even though the commission must hold a public hearing and representatives of a city, village or township and other persons have a right to be heard at such a hearing before the commission makes its determination. That procedural right does not create any substantive legal right in a "named party" and, hence, the "legal rights" of a "named party" are not required by the 1968 act and the 1970 amendment to be determined after an opportunity for an evidentiary hearing within the meaning of the Administrative Procedures Act.

The Administrative Procedures Act was designed to provide procedural protection where a personal right, duty or privilege is at stake. Affording the public at large an opportunity to be heard does not create a personal right in the decision; certain decisions are so largely legislative in character, affecting the populace at large without differentiation and not fundamentally a particular person or persons, that no substantive personal right is to be implied from the opportunity to be heard.[32]

### D. JUDICIAL REVIEW

The 1968 act provides for judicial review pursu-

---

[32] See *Scarlett v Jackson Town Council, Teton County,* 463 P2d 26 (Wyo, 1969); *Sherwin v State Highway Commissioner,* 364 Mich 188, 196; 111 NW2d 56 (1961).

*Compare Emmet County v State Tax Commission,* 397 Mich 550; 244 NW2d 909 (1976), where this Court held that inter-county equalization was not a "contested case" within the meaning of the Administrative Procedures Act although the inter-county equalization statute provides for a hearing. MCLA 209.4; MSA 7.604.

*See, generally,* 1 Davis, Administrative Law Treatise, § 7.04, p 420 and § 7.06, p 429.

ant to the Administrative Procedures Act.[33] The townships additionally rely on the constitutional provision for judicial review of administrative action.[34]

The Administrative Procedures Act provides for judicial review of errors of law and, paralleling the constitutional provision, for a determination whether the administrative action is supported by "competent, material and substantial evidence on the whole record". MCLA 24.306(d); MSA 3.560(206)(d).

The key phrase "substantial evidence" has been construed by this Court to require

"a thorough judicial review of administrative deci-

[33] *See* fn 30, *supra.*

The Administrative Procedures Act provides:

"(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." 1969 PA 306, § 106; MCLA 24.306; MSA 3.560(206).

[34] "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28.

sion, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review." *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).

The townships contend that to avoid a referendum the cities gerrymandered the boundary of the territory to be annexed so that the number of residents would not exceed 100, and that a review of the record in light of the statutory criteria demonstrates that the evidence does not "substantially" support the commission's rulings or its determinations that the annexations were reasonable and should be approved.

It is again pertinent that there are no "private rights" (see footnote 34) in the boundaries of cities, villages or townships; accordingly, the constitutional provision concerning judicial review of administrative action does not limit commission proceedings.

Resolution of a controverted annexation unavoidably involves political considerations and the exercise of a large measure of discretion. Evaluation of the record and of the commission's balancing of the criteria and determination of reasonableness implicates the merits of the proposed an-

nexation and poses considerable risk of drawing the judiciary into the resolution of what continues to be—despite the adoption of the administrative format—essentially a political question.[35]

No vested right or legally protected interest being involved, the judiciary ought to be especially circumspect in reviewing commission rulings and determinations.

On our consideration of whether the commission's procedures, rulings and determinations in these cases were consistent with constitutional and statutory requirements and whether the record adequately supports the orders of annexation, we conclude that, with the exception of the Novi annexation, there is no error and the orders of annexation shall be implemented in accordance with the statute.

## Midland Township

The commission approved a Midland annexation petition for the site of a proposed Consumers Power nuclear power plant. (See drawing attached.) There were no residents of the power plant site. More than 100 persons resided in the area covered by another annexation petition.

The proposed power plant will supply electricity and steam to Dow Chemical Company plants located in the City of Midland. When the nuclear power plant is placed in operation, Dow will close eight power plants located in the city, resulting in the city's loss of $8.6 to $12.6 million in state equalized valuation.

The township levies 1 mill and the city 11.3 mills. If the plant is in the township it will gener-

---

[35] Cf. American Independent Party v Secretary of State, 397 Mich 689; 247 NW2d 17 (1976).

ate tax revenues of $275,000 for the township on an estimated equalized value of $275 million. If the plant is in the city, $1,925,000 would be generated for the city at a reduced millage of 7 mills. The difference in the revenue generated, $1,650,000, would, the Commission concluded, not only "be an asset to the city but to the whole region".

A reduction of the tax rate to 7 mills, said the commission, would enable Dow "to be much more cost competitive than at the present". Dow is the "economic life-blood of a multi-county area surrounding the city". Dow operations in the city are comparatively disadvantaged "due to the level of *ad valorem*" taxes. Reestablishing the competitiveness of Dow's Midland operations "is essential for future growth in the area and the maintenance and expansion of the job market in the Greater Midland area".

The commission acknowledged that the need for services such as water, sewer, fire and police protection were not major factors in its decision as the power plant would provide many of its own internal services and call on the city or township to act only in a backup capacity.

Midland Township contends that when compared with the statutory criteria in subsections (a) and (b) (see part III B, *supra,* for text), the findings of the commission do not support the commission's decision; that the subsection (b) criterion, the probable increase in taxes in the area in relation to the benefits expected to accrue "would, if considered, suggest that the annexation should not take place" and that the commission—relying on the criterion set forth in subsection (c): "[t]he general effect upon the entire community of the proposed action"—improperly "based its result fundamentally

on a decision to award the tax base to the City of Midland," and that "[t]o maintain that the commission may ignore the other criteria and use this provision in this way would be to say that the commission can act on any basis it deems suitable from a policy standpoint."

Merely because some criteria were factually inapplicable or were found by the commission to be of less importance than other criteria does not mean that the commission "ignored" relevant criteria. The commission may regard a particular criterion to be of decisive importance outweighing all other criteria. The commission's decision to "award the tax base" to the City of Midland is supported by record evidence, is not arbitrary and is consistent with the statutory criteria and the standard of reasonableness.

## Novi Township

The Novi petition covers seven separate parcels which earlier had been detached from the Village of Novi in circuit court proceedings (see part III F, infra). The seven parcels are located in widely separated sectors on the city's borders. (See attached map.) Fewer than 100 persons reside in the seven parcels combined.

The statute authorizes the commission to "revise the boundaries of the area"[36] covered by a petition. Novi Township requested that the area covered by the city's petition be expanded to include the balance of the township (Brookland Farms Subdivision, also shown on the attached map), where more than 100 persons resided.

The commission ruled that it could not revise the boundaries to include the eighth parcel be-

[36] MCLA 123.1010; MSA 5.2242(10).

cause its authority did not include "boundary adjustments or additions of land not contiguous with lands proposed for annexation".

While it is clear "in the light of the purpose sought to be served and the practical aspects of annexation"[37] that territory annexed to a city must adjoin the city,[38] just as there is no requirement that land proposed for annexation adjoin any other land included in the petition, a commission revision extending petition boundaries is not limited to land adjoining land proposed for annexation in the petition. The commission, in exercise of its broad-ranging power and discretion, may revise the boundaries set forth in a petition to include any land that might originally have been included in the petition or to exclude land that was included.

The Novi annexation illustrates that the impact of annexation on non-contiguous land may make it appropriate to revise the boundaries to include such land. In approving this annexation the commission proceeded on the assumption that its only options were to approve or disapprove the petition as filed and that it did not have the third option of approving the petition with a revision of the boundaries to include the non-contiguous Brookland Farms Subdivision. Since we have no way of knowing whether the commission would have included the subdivision if it was aware that it had the authority to do so, it is necessary to remand the Novi petition to the commission for reconsideration.

We do not wish to be understood as intimating that because the commission found that approval

[37] *Genesee Twp v Genesee County,* 369 Mich 592, 602; 120 NW2d 759 (1963).

[38] *Id. Similarly, see Owosso Twp v Owosso,* 385 Mich 587; 189 NW2d 421 (1971).

of annexation with the boundaries sought by the city could pose serious problems for the residents of the subdivision[39] that the commission should revise the boundaries to include the subdivision.

## Brighton Township

An area contiguous to the City of Brighton, separated from the rest of the township by Interstate 96, had been designated the "Brighton Urban Growth Area". (See drawing attached.) The city's annexation petition covered more than half of the BUGA area, including a recently developed shopping center, but fewer than 100 persons resided in the area. More than 100 persons resided in the entire BUGA area.

Brighton Township contends that "the sole purpose of thus dividing the BUGA area was to gerrymander the petition to include less than 100 residents, thus forestalling the possibilities of a referendum".

The township asked the commission to revise the boundaries to include the entire BUGA area and contends that the commission's rationale for not revising them is insubstantial.

The claim that the commission should have revised the boundaries is related to the claim that the boundaries described in the petition were gerrymandered to limit the territory included so that there would be fewer than 100 residents and thereby obviate a referendum.

---

[39] In approving the annexation of the seven parcels the Commission said that it had examined the effect of the proposed annexation on the township and recognized that the loss of a major portion of its tax base "could present serious problems for the residents of Brookland Farms Subdivision No. 1 which would become the remainder of the township should the annexation be accomplished".

## Gerrymandering

In each case the city's petition covered an area containing fewer than 100 residents, and the townships responded seeking to have the boundaries revised or petitions consolidated so that there would be more than 100 residents and a referendum would be required.[40]

The Legislature may reasonably determine that territory containing relatively few or no residents should be subject to annexation, and that there is need for a classification based on population to preclude a referendum in such a case and allow it where the territory to be annexed is more populous. (See part III A, *supra.*) City and township strategies based on such a classification are unavoidable. In general, the city will seek to limit the area proposed for annexation so that there are insufficient residents for a referendum and the township will seek to extend the area to require a referendum.

The motive or purpose of the city or township in drawing the proposed boundaries or in requesting a revision of boundaries is not material. The question is not one of motive or purpose, but whether the boundaries as drawn or revised and the annexation are reasonable. The reasonableness of the boundaries as originally proposed or as revised by the commission and of the proposed annexation does not depend on whether they were drawn or appear to have been drawn to require or preclude a referendum.

It will often be possible to draw the boundaries

[40] Midland Township sought to unite the separate annexation petitions, covering the proposed power plant and the area surrounding it. The commission said that it recognized that there was a connection between the two petitions and that they could be united. It concluded that the best interests of the whole Midland community would be served by considering them separately.

to preclude a referendum and likewise to alter them to require one. The commission need not revise the boundaries because approval of the proposed annexation would have an adverse effect on the township, the boundaries would also be reasonable as proposed to be revised and a referendum may prevent annexation. The adverse effect on the township is but a factor to be considered in deciding whether the petition should be approved with the original boundaries or with revised boundaries or not at all.

The commission's decisions approving the Midland, Brighton and Novi annexations with boundaries as originally proposed by the cities were not violative of the statutory standard, reasonableness; the Novi annexation petition is being remanded because the commission did not consider whether it might not also be reasonable or preferable to revise the boundaries to include the Brookland Farms Subdivision.

### E. PUBLIC MEETINGS ACT

The townships further contend that the provisions of the 1968 public meetings act were ignored.[41] The act defines "public meeting" as follows:

" 'Public meeting' means that part of any meeting of a board during which it votes upon any ordinance, resolution, motion or other official action proposed by or to the board dealing with the receipt, borrowing or disbursement of funds or the acquisition, use or disposal of services or of any supplies, materials, equipment or other property or the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons. The term 'public meeting' shall not mean any meeting, the publication of the

---

[41] This act has been superseded by the 1976 Open Meetings Act, 1976 PA 267; MCLA 15.261 *et seq.;* MSA 4.1800(11) *et seq.*

facts concerning which would disclose the institution, progress or result of an investigation undertaken by a board in the performance of its official duties." 1968 PA 261; MCLA 15.251(2); MSA 4.1800(1)(2).

The hearing before the commission did not concern the "receipt, borrowing or disbursement of funds or the acquisition, use or disposal of services or of any supplies, materials, equipment or other property". Nor, for reasons already stated, did it concern "the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons".

## F. DISCONNECTED LAND

Lastly, Novi Township contends that land disconnected from the Village of Novi by court orders entered pursuant to the farmland disconnection act[42] was not properly annexed to the City of Novi.

The township acknowledges that disconnection is not necessarily permanent and that new facts might arise which could render a disconnection order obsolete. A disconnection order does not create a vested right or legally protected interest beyond the power of the Legislature to provide for annexation of the land disconnected. Disconnected land is subject to annexation by a city pursuant to the provisions of the 1970 amendment. Exercise by the commission of the power to annex disconnected land does not constitute a collateral attack on the judgment of the circuit court disconnecting the land.

Reversed. The orders of the commission in Midland Township and Brighton Township shall be effected as of the earliest practicable date; those cases are remanded to the circuit courts for the sole purpose of implementing the commission's

---

[42] MCLA 123.31 et seq.; MSA 5.3561 et seq.

orders in accordance with the statutes.[43] The Novi Township petition is remanded to the commission for further proceedings consistent with this opinion. No costs, a public question.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZ-GERALD, and RYAN, JJ., concurred with LEVIN, J.

BLAIR MOODY, JR., J. I concur in the majority's result in these consolidated cases. However, I cannot endorse without reservation all the analysis developed in the principal opinion; specifically I do not subscribe to all the reasoning and language contained in Part II (B) and Part III (A), (B), and (D) of this opinion.

[43] It appears both from the briefs and the responses of counsel for the parties during oral argument that the appropriate effective date may depend on the particular facts and circumstances of the cases.

MIDLAND ANNEXATION

NOVI ANNEXATION

BRIGHTON ANNEXATION