WILLIAMS TOWNSHIP v CITY OF MIDLAND

Docket Nos. 78-1696, 78-1697, 78-1698. Submitted February 14, 1979, at Lansing.—Decided February 5, 1980. Leave to appeal applied for.

John Rapanos filed a petition with the State Boundary Commission requesting the annexation of certain territory in Williams Township to the City of Midland. Williams Township is located in Bay County. The City of Midland is located in both Bay and Midland Counties with the greater portion being situated in Midland County. The commission accepted the petition and appointed two Midland County members to the panel for consideration of the annexation petition. The commission approved the annexation. Upon a request for review of the commission findings by the Township of Williams, the matter came before the Bay County Circuit Court, Leon R. Dardas, J. The questions presented in this appeal were whether the local members of the State Boundary Commission should have been appointed from Bay County or from Midland County and whether the commission had used reasonable criteria in arriving at its order permitting annexation. Judge Dardas ordered that the decision of the commission be set aside on the grounds that board members should have been appointed from Bay County and not Midland County. The court did not reach the question of whether the commission used reasonable criteria in reaching its decision. John Rapanos, the State Boundary Commission and the City of Midland appeal. *Held:*

The parties' differences stem from their conflicting interpretations of the meaning of the word "territory" as it is used in the annexation statute. The affected districts in a petition for

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 55-57, 66, 67, 70 *et seq.*
  Proper remedy or procedure for attacking legality of proceedings annexing territory to municipal corporation. 18 ALR2d 1255.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 55.
[3] 73 Am Jur 2d, Statutes §§ 249, 250, 257.
[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 66, 67.

annexation include the whole of each city or township being considered. Therefore, the county members who sit on the State Boundary Commission to vote on the question of annexation should be chosen from the county in which the greater part of the territory to be included within the adjusted boundaries lies. This is Midland County, not Bay County. On remand a determination of whether the commission used reasonable criteria in reaching its decision should be resolved.

Reversed and remanded with instructions.

MACKENZIE, J., concurred separately. She states that the phrase "municipal boundary adjustment" includes the process of consolidation and incorporation as well as annexation. The total affected area is considered in both consolidation and incorporation; therefore, since the total affected area is considered for the two other forms of "municipal boundary adjustment", the interests of consistency suggest that "territory" be interpreted to be the combined area of the city and township where the "municipal boundary adjustment" involves annexation. She concurs in holding that the annexation commission containing two Midland County members was properly constituted.

## OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS — ANNEXATION — BOUNDARIES — STATE BOUNDARY COMMISSION — VOTING MEMBERS — STATUTES.

   The district to be affected by a petition for annexation includes the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed; therefore, where a statute provides that "if a municipal boundary adjustment involves territory lying in more than one county, the county members of the county in which the greater part of the territory to be included within the adjusted boundaries lies shall serve on and be voting members of the [boundary] commission" the plain meaning is that county members who sit on the State Boundary Commission to decide the question of annexation shall be chosen from that county which has the larger proportion of the total territory encompassed by the proposed boundaries (MCL 123.1005; MSA 5.2242[5]).

2. MUNICIPAL CORPORATIONS — BOUNDARIES — VESTED RIGHTS — ANNEXATION.

   The Legislature is free to change city, village and township boundaries at will; no governmental authority or person has any legal right in the boundaries of such governmental units.

3. STATUTES — CONSTRUCTION — CONSIDERATION OF ALL PARTS — GENERAL PLAN AND PURPOSE.

Judicial interpretation of a statute requires that all parts of a specific statutory provision, as well as the entire act, should be considered to determine the general plan and purpose of the provision involved.

4. MUNICIPAL CORPORATIONS — ANNEXATION — BOUNDARY ADJUSTMENTS — CITY — TOWNSHIP — VOTING PRIVILEGES — CONSTRUCTION OF STATUTES — STATUTES.

The term "territory" in the statute providing that two members of the State Boundary Commission should be from the county in which a municipal boundary adjustment is being considered should be interpreted to include the combined area of an annexing city and a township to be annexed; therefore, for the purpose of designating commissioners to vote on possible annexation, the commissioners should come from the county containing the greater part of the combined city and township area where the municipal adjustment involves a city annexing a portion of a township located in a neighboring county (MCL 123.1005; MSA 5.2242[5]).

5. MUNICIPAL CORPORATIONS — ANNEXATION.

The territory involved in an annexation includes the area of the territory to be annexed as well as the territory created as a result of the annexation.

*Higgs, Higgs & Darbee, P.C.* (by *Michael A. Makulski),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Craig Atchinson* and *Chester W. Lewis,* Assistants Attorney General, for the State Boundary Commission.

*Darrell W. Foell,* for John A. Rapanos.

*John J. Rae,* for the City of Midland.

Before: M. J. Kelly, P.J., and M. F. Cavanagh and Mackenzie, JJ.

M. F. Cavanagh, J. We agree with the conclusion reached by Judge MacKenzie in her concurring opinion and refer the reader to her opinion for a thorough representation of the facts. We feel it necessary, however, to employ an approach different from that of Judge MacKenzie in reaching that conclusion.

As recognized by Judge Mackenzie, the parties' differences stem from their conflicting interpretations of the meaning of the word "territory" as it is used in the sixth sentence of § 5 of the state boundary commission act. MCL 123.1001 *et seq.;* MSA 5.2242(1) *et seq.* We, too, note that the term is arguably ambiguous if the reader contemplates that it could refer to the end result, *i.e.,* the city seeking the annexation combined with the land area to be annexed, or, simply, the land area to be annexed. However, if the Legislature intended the latter interpretation, it could have simply added to the word, "territory", the single word "sought", or the phrase, "sought to be annexed", or some such similar effective description. We are persuaded that to adopt the construction urged by the plaintiff township would be to adopt an overly narrow and constrained meaning of the term, especially in light of other statutory provisions.

Section 11a of the boundary commission act vests jurisdiction in the commission "over petitions or resolutions for annexation as provided in section 9 of Act No. 279 of the Public Acts of 1909, as amended". MCL 123.1011a; MSA 5.2242(11a). Section 9 directs, in its second sentence, that, "The district to be affected by every such proposed incorporation, consolidation or change of bounda-

ries shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed". MCL 117.9(1); MSA 5.2088(1). Section 9 then describes: (1) how the commission shall process annexation requests according to the provisions of the boundary commission act, MCL 117.9(2); MSA 5.2088(2); (2) how approval of the annexation of an area where more than 100 persons reside is subject to a referendum under specified conditions, MCL 117.9(5); MSA 5.2088(5); and (3), that annexation of territory from a township to a home rule city must follow the provisions of § 9 so long as 1968 PA 191 is in effect. MCL 117.9(11); MSA 5.2088(11). Midland is a home rule city.

The sixth sentence of § 5 of the boundary commission act states that, "If a municipal boundary adjustment involves territory lying in more than one county, the county members of the county in which the greater part of the territory to be included within the adjusted boundaries lies shall serve on and be voting members of the commission". MCL 123.1005; MSA 5.2242(5). Two definitions included in that act are pertinent to the foregoing sentence, *viz.*, " 'adjusted boundaries' means the total area that would be encompassed by a municipality if a municipality boundary adjustment is approved as proposed in a petition or resolution", MCL 123.1001(a); MSA 5.2242(1)(a) and " 'municipal boundary adjustment' means * * * the annexation of territory to a city where the commission has jurisdiction over annexation proceedings". MCL 123.1001(e); MSA 5.2242(1)(e). When these definitions are substituted into the sixth sentence and one recalls the directive that the "affected districts" include the whole of each city or township being considered, the ambiguity which plaintiff propounds loses credence. The

meaning of the contested sentence is plain, *i.e.,* the county members who sit on the commission shall be chosen from that county which has the larger proportion of the total territory encompassed by the proposed boundaries. We agree with the importance of Judge Mackenzie's observation that neither county will lose any territory as a result of the annexation proceedings. *Romeo Homes, Inc v Commissioner of Revenue,* 361 Mich 128, 135; 105 NW2d 186 (1960). A case that concerned a nearly identical factual context and that relied upon similar language in an earlier version of the home rule cities act interpreted the statute in an analogous manner. *Warren Products, Inc v Northville,* 356 Mich 481; 96 NW2d 764 (1959).

The reasoning of the trial judge in setting aside the commission's order is appealing, but superfluous, since "The Legislature is free to change city, village and township boundaries at will * * * [and] no governmental authority or person has any legal right in the boundaries of a city, village or township". *Midland Twp v State Boundary Comm,* 401 Mich 641, 664-674; 259 NW2d 326 (1977), *lv den* 435 US 1004; 98 S Ct 1873; 56 L Ed 2d 386 (1978). Rather than attempting to discern the logic behind the legislation here involved, "* * * the judiciary ought to be especially circumspect in reviewing commission rulings and determinations". *Midland Township, supra,* p 674.

Therefore, the decision of the lower court is reversed and the cause remanded for determination of the remaining issue. No costs, a public question being involved.

M. J. Kelly, P.J., concurred.

Mackenzie, J. *(concurring).* The defendants appeal as of right from a decision of the Bay County

Circuit Court, which reviewed the final decision of the State Boundary Commission on a petition to annex territory to the City of Midland, Michigan.

On August 28, 1972, a petition was filed, by one John Rapanos, requesting the annexation of certain territory[1] in Williams Township to the City of Midland. The Township of Williams is located in Bay County. The City of Midland is located in both Bay and Midland Counties, the greater portion being situated in Midland County.

The State Boundary Commission is responsible for processing petitions for annexation. MCL 123.1006; MSA 5.2242(6). The commission is composed of three members appointed by the Governor, MCL 123.1002; MSA 5.2242(2), and two members from the county in which the municipal boundary adjustment is being considered, MCL 123.1005; MSA 5.2242(5).

In December, 1972, the executive secretary of the State Boundary Commission determined that the petition was properly filed, and appointed two Midland County members to the panel for consid-

---

[1] The petition was accompanied by the following description of the territory:

"Commencing on the West line of Section 19, Township 14 North, Range 3 East, Williams Township, Bay County, Michigan, at a point 945.95 feet South of the Northwest corner of said Section 19; thence Southeasterly along the Southwesterly right-of-way line of M-20, US-10 Highway to its intersection with the East-West one quarter line of Section 19; thence Easterly along said East-West one quarter line to the East line of the West one half of the East one half of the Southwest one quarter of Section 19; thence South to the South line of Section 19; thence West along the South line of Section 19 a distance of 656.16 to its intersection with the West one eighth line of Section 30; thence South along the West one eighth line of Section 30 to East-West one quarter line of Section 30; thence West along said East-West one quarter line to the West line of Section 30; thence North along the West section line to the Southwest corner of Section 19; thence East along the South line of Section 19 a distance of 443 feet; thence North parallel to the West line of Section 19 to the East-West one quarter line of Section 19; thence West along said East-West one quarter line a distance of 443 feet to the West line of Section 19; thence North along said West section line to the point of beginning."

eration of the annexation petition. The State
Boundary Commission approved the annexation of
certain Williams Township property[2] and issued its
Summary of Proceedings, Findings of Fact, and
Order on August 14, 1973. The decision of the
commission was appealed to the Bay County Cir-
cuit Court on October 9, 1973. By stipulation of
the parties, the appeal was held in abeyance pend-
ing the decision in *Midland Twp v State Boundary
Comm,* 401 Mich 641; 259 NW2d 326 (1977). That
decision disposed of two issues[3] on appeal in the
instant case, leaving two remaining issues before
the circuit court. The first was whether the local
members of the State Boundary Commission
should have been appointed from Bay County or
from Midland County. The court was further
asked to consider whether the commission had
used reasonable criteria in arriving at its order
permitting annexation.

On March 27, 1978, the circuit court ordered
that the decision of the State Boundary Commis-
sion be set aside on the grounds that the board
members should have been appointed from Bay

_____

[2] The following described property was ordered to be annexed:

"Beginning at the West 1/4 post of Section 19, Township 14 North,
Range 3 East; thence East along the East-West 1/4 line of Section 19
a distance of 443 feet; thence South parallel to the west line of
Section 19 to the South line of Section 19; thence East along the
South line of Section 19 and the centerline of Fisher Road to a point
660 feet east of the South 1/4 post of Section 19; thence North
parallel to the North-South 1/4 line of Section 19 to the centerline of
Midland Road; thence Westerly along the centerline of Midland Road;
thence Westerly along the centerline of Midland Road to its intersec-
tion with the Southwesterly right-of-way line (extended) of US-10 and
M-20; thence Northwesterly along said right-of-way line to the west
line of Section 19; thence South along the west line of Section 19 to
the point of beginning."

[3] The two contentions disposed of by the *Midland Township* decision
were: 1) that the act creating the State Boundary Commission is
unconstitutional and, 2) that the commission had no authority to
include land in the annexation order that had not initially been the
subject of the annexation petition.

County and not Midland County. In light of this decision, the court did not reach the question of whether the commission used reasonable criteria in reaching its decision.

Section 5 of the act, MCL 123.1005; MSA 5.2242(5), allows for local representation in the approval of annexation petitions. The statute provides:

*"The presiding probate judge in each county shall appoint 2 persons residing in that county to serve on the commission during such time as the commission shall have under consideration municipal boundary adjustments for territory lying within his county, 1 of whom shall reside in a township and 1 within a city.* If there is no city in a county at the time of the filing of a petition for a municipal boundary adjustment the presiding probate judge shall appoint 2 county members from the county at large. Within 30 days after notice from the commission that a municipal boundary adjustment is pending in the county and the office of 1 or more of the county members is vacant, the presiding probate judge shall make original appointments and any appointment to fill a vacancy. A county member shall serve for 3 years and until his successor is appointed and qualified. Notwithstanding the appointment and qualification of a successor a county member shall continue to serve until the conclusion of all boundary adjustment matters which were filed during his term or the filing of which gave rise to his appointment. *If a municipal boundary adjustment involves territory lying in more than 1 county, the county members of the. county in which the greater part of the territory to be included within the adjusted boundaries lies shall serve on and be voting members of the commission.* A county member shall receive per diem and expenses as authorized and paid by the county board of supervisors when serving on the commission on matters involving territory within his county. A county member shall qualify by taking and filing the constitutional oath of office."* (Emphasis supplied.)

The issue is whether the first or the sixth sentence is applicable to the instant case.

The circuit court determined the first sentence to be applicable by examining § 1 of the act, MCL 123.1001; MSA 5.2242(1), which contains various definitions. According to this section:

"As used in this act: (a) 'Adjusted boundaries' means the total area that would be encompassed by a municipality if a municipal boundary adjustment is approved as proposed in a petition or resolution. (b) 'Commission' means the state boundary commission. (c) 'Secretary' means the executive secretary of the commission. (d) 'Municipality' means an incorporated city or village. (e) 'Municipal boundary adjustment' means incorporation of a new city or village, consolidation of 2 or more cities, villages or townships as a new city, and the annexation of territory to a city where the commission has jurisdiction over annexation proceedings."

Substituting the appropriate definitions into the first and sixth sentences of § 5, the court reached the following results:

"First sentence: 'The presiding probate judge in each county shall appoint two persons residing in that county to serve on the commission during such time as the commission shall have under consideration (the annexation of territory to a city) for territory lying within his county * * *'

"Sixth sentence: 'If (the annexation of territory to a city) involves territory lying in more than one county, the county members of the county in which the greater part of the territory to be included within the (new city boundary lines) lies shall serve on and be voting members of the commission.' "

The court found the word "territory" as used in sentence six, § 5 of the act to mean the land area to be annexed, being of the opinion that the defen-

dant's position that "territory" referred to *both* the city doing the annexing and the land area to be annexed:

"* * * would be tantamount to allowing any city in an adjacent county to grab off large chunks of unpopulated areas within a neighboring county without any representation of that county on the five-member panel hearing such annexation petitions. Under defendant's theory, the City of Midland could seek annexation of any large industrial or commercial parcel in Bay County, as long as such parcel to be annexed had fewer than 100 residents and had a land area 'smaller' than that encompassed by the annexing city. Each time that the city accomplished its annexation, its total area would be increased so that the next annexation attempt could be for an even larger, sparsely populated (less than 100 people) area."

Thus, since the court noted that the territory to be annexed was exclusively located in Bay County, the court determined that two Bay County Boundary Commissioners should have sat on the five-member panel in accordance with the first sentence of § 5.[4] Because the State Boundary Commission was improperly constituted, the court set aside the commission's order.

I would disagree with the circuit court's decision and would find that the commission, containing two Midland County members, was properly constituted.

I first note that § 5 is ambiguous, in that it is unclear whether the term "territory" in sentence six refers to both the city and the land to be annexed or merely the latter area. Statutory interpretation is appropriate, and, therefore, we must

---

[4] The court determined that the sixth sentence applied only if the territory to be annexed lay in more than one county, a situation not present in the instant case.

consider the intent of the Legislature. All parts of a specific provision should be considered and the entire act may be considered to determine the general plan and purpose of the section. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956).

When the phrase "annexation of territory to a city" is inserted in the sixth sentence of § 5, the following result is achieved:

"If (the annexation of *territory* to a city) involves *territory* lying in more than one county, the county members of the county in which the greater part of the territory to be included within the (new city boundary lines) lies shall serve on and be voting members of the commission." (Emphasis supplied.)

Although the combined language presents a strong argument for the contention that "territory" means only the area to be annexed, it is not conclusive. More cogent reasons exist to interpret the term otherwise.

According to § 1(e), the phrase "municipal boundary adjustment" includes the processes of consolidation and incorporation as well as annexation. If Williams Township were a city, and Midland and Williams were being consolidated into a new city, the involved "territory" would be considered as constituting *both* areas. There is no basis for a conclusion that only one of the two cities would be considered the involved "territory". Thus, in such an event, the two commissioners would come from Midland County. A similar result would occur if Midland and Williams were two townships to be incorporated into one city. Since the total affected area is considered for the two other forms of "municipal boundary adjustment", the interests of consistency suggest that "terri-

tory" be interpreted to be the combined area of the city and township when the "municipal boundary adjustment" involves annexation.

Further, I fail to perceive a sufficient reason for interpreting the involved "territory" of the sixth sentence in § 5, in a different manner when the "municipal boundary adjustment" involves a city annexing a township located in a neighboring county. The reason urged by Williams Township is that the Legislature intended to have county commissioners whose territory was to be affected sit on the commission. In this way, the township argues, the annexation petition would be presented to an unbiased panel. There is, however, no basis for the assumption that Bay County Commissioners would be more unbiased than Midland County Commissioners. It is important to keep in mind that Bay County is not losing any territory.

The State Boundary Commission's decision that the territory affected by the annexation includes both the City of Midland and the land in Williams Township to be annexed is reinforced by the commission's duty to apply the criteria set forth in § 9 of the act, MCL 123.1009; MSA 5.2242(9)[5] when

---

[5] MSA 5.2242(9) states:

"Criteria to be considered by the commission in arriving at a determination shall be:

(a) Population; population density; land area and land uses; assessed valuation; topography, natural boundaries and drainage basins; the past and probable future urban growth, including population increase and business, commercial and industrial development in the area. Comparative data for the incorporating municipality, and the remaining portion of the unit from which the area will be detached shall be considered.

(b) Need for organized community services; the present cost and adequacy of governmental services in the area to be incorporated; the probable future needs for services; the practicability of supplying such services in the area to be incorporated; the probable effect of the proposed incorporation and of alternative courses of action on the cost and adequacy of services in the area to be incorporated and on the remaining portion of the unit from which the area will be detached; the probable increase in taxes in the area to be incorporated in

determining whether to approve a boundary adjustment. This section requires analysis of the general effect of the proposed action upon the entire community. The standards indicate that the territory involved in an annexation includes the area of territory to be annexed as well as the territory created as the result of the annexation.

I conclude that the term "territory" appearing in sentence six of § 5 refers to the combined area of the city conducting the annexation and the land to be annexed. This is clearly the case when there is either consolidation of two cities or incorporation of two townships into one city. I don't perceive sufficient reasons for interpreting the phrase differently when annexation is involved.

I would reverse the circuit court's decision, and remand for a determination of the remaining issue of whether the commission used reasonable criteria in reaching its decision.

relation to the benefits expected to accrue from incorporation; and the financial ability of the incorporating municipality to maintain urban type services in the area.

(c) The general effect upon the entire community of the proposed action; and the relationship of the proposed action to any established city, village, township, county or regional land use plan. (MCL § 123.1009.)"