FLORKA v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—BUSINESS—AD-
MINISTRATIVE OFFICERS.

The legislative body of a city has the right to adopt reasonable
regulations with reference to the carrying on of various types
of business within zones established by ordinance and to dele-
gate to administrative officers the determination of facts
controlling application of legislative provisions.

2. CONSTITUTIONAL LAW—DELEGATION OF POWER.

The legislature cannot delegate its power to make a law, but
it can make a law to delegate a power to determine some fact
or state of things upon which the law makes, or intends to
make, its own action depend.

3. ADMINISTRATIVE LAW—DISCRETION OF OFFICERS.

The degree of certainty with which standards for the exercise
of discretion are set up for administrative officers must nec-
essarily depend on the subject matter and the circumstances.

4. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—PERMIT TO OPER-
ATE JUNK BUSINESS—DISCRETION OF OFFICERS.

Factors to be considered by municipal officers in the exercise of
their discretion as to whether or not to issue a permit to engage
in the junk business allowed under a city zoning ordinance
are the type of person who proposes to engage in the business,

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations §§ 305–315.
[2] 37 Am Jur, Municipal Corporations § 80.
[3] 1 Am Jur 2d, Administrative Law §§ 117–122.
[4] 38 Am Jur, Municipal Corporations §§ 371–373.
  58 Am Jur, Zoning §§ 92, 93.
  Regulation of junk dealers. 45 ALR2d 1391.
[5] 58 Am Jur, Zoning §§ 24, 36, 92, 93.
  Regulation of junk dealers. 45 ALR2d 1391.
[6] 58 Am Jur, Zoning §§ 92, 93, 233, 247, 250.
  Regulation of junk dealers. 45 ALR2d 1391.
[7] 14 Am Jur, Costs §§ 21–24, 36.

the character of the goods he proposes to handle, the location of the business, and whether it will tend to serve the general welfare of the community or result to the prejudice thereof.

5. SAME—ZONING ORDINANCE—CITY PLAN COMMISSION—JUNK YARD.
   Standard set forth in city zoning ordinance for guidance of city plan commission as to use of property that it not be "injurious to the surrounding neighborhood and not contrary to the spirit and purpose" of the ordinance, presumptively deemed sufficient by the legislative body of the city for the proper guidance of the commission, was not inherently vague and uncertain, and so far as permit to operate a junk yard in an area zoned for heavy manufacturing, also included a consideration of the inherent nature of the business, the means of operation thereof, the extent of operations contemplated, and other pertinent facts (Detroit Zoning Ordinance § 17.1 [3]).

6. SAME—ZONING ORDINANCE—JUNK YARD—CERTIORARI—EQUITY.
   Action of city plan commission in denying plaintiff a permit to operate a junk yard out of doors but permitting indoor operation in area zoned for heavy manufacturing, taken after hearings, being within the authority of city zoning ordinance was properly reviewable by the circuit court by way of certiorari rather than by suit in equity, hence, court of equity's order that permit be issued and granting injunctive relief was improper (Detroit Zoning Ordinance § 17.1 [3]).

7. COSTS—JUNK YARD.
   No costs are allowed in suit by plaintiff, seeking permit to operate a junk yard in area zoned for heavy industry.

Appeal from Wayne; Weideman (Carl M.), J. Submitted March 5, 1963. (Calendar No. 65, Docket No. 49,242.) Decided April 5, 1963. Rehearing denied May 9, 1963.

Bill by John Florka, Joseph Florka, and others, against the City of Detroit, a municipal corporation, and Clyde E. Dougherty, commissioner of department of buildings and safety engineering, for declaration of rights entitling them to approval of the use of their property for junk yard, and to invalidate zoning ordinance and restrain enforcement thereof. Decree for plaintiffs. Defendant appeals. Reversed

and remanded with directions to set aside decree and dismiss bill.

*Cassese, Batchelder, Jasmer & Evanski,* for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and *John F. Hathaway,* Assistant Corporation Counsel, for defendants.

CARR, C. J. This case involves the validity of a provision of the zoning ordinance of the city of Detroit relating to special uses of property. The material facts are not in dispute. In 1951 plaintiffs herein acquired land having a frontage of 160 feet on Nevada avenue with a depth of 760 feet extending to a parallel street designated as Stockton avenue. Said property is within a zone in which heavy manufacturing (MH) is allowed.

In 1958 plaintiffs made application to the city plan commission for the issuance of a permit allowing them to establish a junk yard. Said application was made in accordance with section 17.1(3) of the zoning ordinance, which relates to the approval of applications for authority to establish and operate in an MH zone certain designated businesses. Said provision reads:

"The following uses, or other uses similar thereto, subject to the approval of the commission as being not injurious to the surrounding neighborhood and not contrary to the spirit and purpose of this ordinance, provided, that for drive-in theaters any action of the commission shall be subject to the approval or disapproval of the common council."

Following the language quoted is a list of some 15 specific uses, including "junk yards". A hearing was had at which opposition to the granting of the plaintiffs' request was expressed. A rehearing was

granted at which there was further opposition and a repetition of the denial. However, plaintiffs were issued a permit to conduct a junk yard within a building but denied the use of the property outside of said building for the storage of junk.

Such limited permit was not satisfactory and, in consequence, plaintiffs filed suit in circuit court alleging that the provision in question of the zoning ordinance was invalid insofar as it required a permit for the establishing of a junk yard on the ground that sufficient standards were not specified by which the plan commission should be governed. It was averred that the denial of the application "was based upon the ground that the use of the premises for the purposes requested would be injurious to the surrounding neighborhood and would be contrary to the spirit and purpose of the zoning ordinance." It was further claimed that the action of the plan commission was arbitrary, illegal, and without due process of law. Petitioners asked that the provision be declared null and void, that defendants be restrained from enforcing it, and that plaintiffs might be granted such further relief as the court should find to be equitable.

Answer to plaintiffs' pleading was duly filed. A pretrial hearing was had, and the case came on for hearing before the court in due course. At such hearing it was the position of counsel for plaintiffs that the provision of the ordinance in question should be held invalid because of the failure to provide proper standards or guides to which the plan commission should be subject, and that the action of the plan commission under the circumstances with reference to the location of the property and the various uses to which surrounding properties were subject was "arbitrary, capricious and unreasonable". On behalf of defendants a motion to dismiss was made and taken under advisement by the circuit

judge presiding at the hearing. It was urged in support of said motion that the proper method for reviewing the action of the plan commission was by certiorari, that the validity of the provision of the zoning ordinance in question had been upheld in prior cases; and, in substance, that the granting of the permit sought by plaintiffs was not subject to review by trial *de novo* in equity.

Following the receipt of testimony introduced by the parties to the case the circuit judge filed an opinion sustaining the claims of counsel for plaintiffs as to the invalidity of the provision of the zoning ordinance, above quoted, requiring special permits for specified uses, and further determined that on the basis of the proofs plaintiffs were entitled to establish the contemplated junk yard. A decree was entered accordingly enjoining and restraining defendants from preventing the use of the premises by plaintiffs or by their assigns for the purpose indicated, and further commanding the issuance of a certificate of approval for such use together with a building permit. From such decree defendants have appealed.

The primary question presented to this Court relates to the validity of the ordinance provision assailed by plaintiffs. Specifically, the question is whether section 17.1(3) of the ordinance provides proper and sufficient standards by which the plan commission shall be governed in passing on an application for approval of the use of property for a junk yard in an MH zone. As before stated, the commission rejected plaintiffs' application on the ground that the use sought would be injurious to the surrounding neighborhood and contrary to the spirit and purpose of the ordinance. It thus appears affirmatively that the commission, in considering the matter at issue following the hearings, had in mind the specific requirements prescribed by the legisla-

tive body of the city and acted accordingly after a consideration of the facts and circumstances involved. It may be assumed that the legislative action on behalf of the city was predicated on the belief that the standards prescribed for the commission's guidance were sufficient with respect to the use of property in a section of the city zoned as is the property involved. No question is here presented as to the validity or propriety of the zoning classification.

Counsel for appellants have directed attention to the decisions of this Court in *City of Detroit v. S. Loewenstein & Son,* 330 Mich 359, and *Baruk v. Rogovein,* 356 Mich 476. In the first case cited application was made to the plan commission in accordance with the ordinance of defendant city for the approval of the use of certain property in an MH district for the erection and operation of a slaughterhouse. Following a hearing the commission approved said application. Thereafter a building permit was issued by the city department of buildings and safety engineering, limited, however, to the installation of footings and foundations for required structures. The city of Detroit brought suit in equity to enjoin the use of the property for a slaughterhouse and rendering plant on the ground that the plan commission had not complied with the requirements of the ordinance and had not specifically determined that the slaughterhouse would not be injurious to the surrounding neighborhood and not contrary to the spirit and purpose of the ordinance. Following a hearing the circuit court dismissed the bill of complaint and this Court affirmed on the ground that the plan commission had in fact complied with the standards set up "as a condition precedent to the valid performance of its powers under the ordinance." The Court further declared, in a unanimous opinion, that (p 365):

"The zoning ordinance has conferred upon the plan commission the authority to find whether an animal slaughterhouse is injurious to the surrounding neighborhood and not contrary to the spirit and purpose of the ordinance."

Based on the conclusions reached on the record before it this Court held that the circuit judge had properly dismissed the suit of the city of Detroit, and further held that a writ of mandamus granted by the circuit court to the property owners was justified, the appeal in the mandamus action being submitted and determined in conjunction with the disposition of the equity suit. The validity of the ordinance was not specifically challenged in either of said cases, the parties concerned, as well as the courts passing on the issues involved, assuming the constitutionality of section 17.1(3).

A like situation existed in *Baruk* which was a suit in equity brought by the plaintiff to restrain the defendants from establishing and operating a junk yard in a district zoned as MH, the plan commission having approved a request by the property owners for such use. The action of the commission was based on determination thereby that the junk yard would not be injurious to the surrounding neighborhood and not contrary to the spirit and purpose of the zoning ordinance. The bill of complaint filed was dismissed in circuit court and this Court affirmed such action.

The legislative body of the city of Detroit had the right to adopt reasonable regulations with reference to the carrying on of various types of business within the zones established by the ordinance. In connection with the exercise of its legislative authority it had the right to delegate to administrative officers the determination of facts which should control the application of legislative provisions. This

Court in *King* v. *Concordia Fire-Insurance Co.,* 140 Mich 258, 268 (6 Ann Cas 87), approved the distinction between such delegated power and legislative power declared in *Locke's Appeal,* 72 Pa St 491, 498 (13 Am Rep 716), as follows:

" 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' "

In support of the legal proposition so stated the Court cited with approval *Field* v. *Clark,* 143 US 649 (12 S Ct 495, 36 L ed 294); *Hurst* v. *Warner,* 102 Mich 238 (26 LRA 484, 47 Am St Rep 525); *Dowling* v. *Lancashire Insurance Co.,* 92 Wis 63 (65 NW 738, 31 LRA 112).

In *In re Brewster Street Housing Site,* 291 Mich 313, there was involved an ordinance of the city of Detroit creating a municipal housing commission with authority to conduct a study of housing conditions within the city. Among objections to the exercise of the authority granted by the ordinance was a claim that there was an improper delegation of legislative power. The Court recognized the general proposition that such power is not subject to delegation, but also declared (p 340) that "it is clear the legislature may confer the authority for the finding of facts upon administrative officers, boards or commissions." *King* v. *Concordia Fire-Insurance Co., supra,* was cited with approval and it was held that the legislative action pursuant to which the housing commission was created was not open to attack on constitutional grounds.

Claims of attempted improper delegation of legislative power to administrative officers or commissions have been involved in many decisions from other States. Among such decisions is *Sellors* v.

*Town of Concord,* 329 Mass 259 (107 NE2d 784). At issue there was the validity of provisions of the zoning ordinance of the town of Concord, the claim being made that such provisions involved an attempt to grant uncontrolled discretion to the board of appeals provided for in said ordinance. The following excerpt from the opinion presents the matter at issue and the determination of the court with reference thereto. The case is of interest in that the standards imposed for the guidance of the board of appeals were very similar to those set forth in the section of the zoning ordinance involved in the case at bar. We quote as follows:

"Relying on *Smith* v. *Board of Appeals of Fall River,* 319 Mass 341 (65 NE2d 547), the demandant next contends that section 6 (f) of the zoning by-law is invalid in that it confers uncontrolled discretion on the board of appeals and that the judge erred in ruling that it was valid. We do not agree. That section authorizes the board to permit municipal and other designated uses in any district, provided the board rules 'that such use is not detrimental or injurious to the neighborhood. * * * ' By section 6 (i) it is further provided that 'In issuing any permit respecting a special * * * use provided for herein, the board of appeals may impose such safeguards, conditions and limitations pertaining to the use in question as may, in the reasonable opinion of the members of said board, be necessary or advisable to prevent such permitted use from being either detrimental or injurious to the neighborhood or to the value of any property within the neighborhood, or to prevent such permitted use from substantially derogating from the purpose of this by-law. * * *' There is also the provision in section 8 (c) that 'the board of appeals designated by section 27 of chapter 40 of the General Laws* shall act on all

---

* The sections here referred to have been repealed and enacted in the zoning enabling act (1954). See Anno Laws, Mass, c 40A.—Reporter.

matters within its jurisdiction under this by-law in the manner prescribed by section 27A of said chapter and *subject always to the rule that due consideration shall be given to conserving the public health, safety, convenience, welfare, and property values'* (emphasis supplied).    We are of opinion that these sections provide adequate standards for the board's guidance and authorize it to 'hear and decide requests for special permits' within the meaning of Gen L (Ter ed) c 40, § 30.   * * *   The cases at bar fall within the authority of *Town of Lexington* v. *Govenar,* 295 Mass 31, 34, 35 (3 NE2d 19), *Lambert* v. *Board of Appeals of Lowell,* 295 Mass 224, 225, 227 (3 NE2d 784), *Building Commissioner of Medford* v. *C. & H. Co.,* 319 Mass 273, 281, 282 (65 NE2d 537), and *Carson* v. *Board of Appeals of Lexington,* 321 Mass 649, 654 (75 NE2d 116), rather than *Smith* v. *Board of Appeals of Fall River, supra."*

A like question was involved in *Borough of North Plainfield* v. *Perone,* 54 NJ Super 1 (148 A2d 50). In that case defendant Perone was convicted of operating motor vehicle service stations contrary to the zoning ordinance of North Plainfield.    Defendant sought reversal of the convictions on a number of grounds, among which was the claim that the ordinance in question did not provide sufficient standards for the guidance of a so-called "board of adjustment" authorized to grant exceptions from a prohibition against service stations.    The trial judge, relying on a prior decision of the appellate court, determined that the standards were sufficient.    In upholding such conclusion it was said (pp 14, 15):

"The ordinance in this case calls for a determination by the board as to whether the particular exception would be 'in harmony with [the] general purpose and intent' of the zoning ordinance.    The North Plainfield ordinance, to the extent it has been reprinted in defendant's appendix, itself contains no declaration of purposes and policies.    But the power

of the board to grant an exception stems directly from the enabling statute, NJSA 40:55–39(b), and the exercise of such power need only be in keeping with the purposes of zoning regulations as set forth in RS 40:55–32, NJSA. This is the logic of *Ward v. Scott,* 11 NJ 117 (93 A2d 385), dealing with the discretion vested in the board by NJSA 40:55–39 (c). It is equally compelling in this case."

*Burnham* v. *Board of Appeals of Gloucester,* 333 Mass 114 (128 NE2d 772), involved litigation arising from the issuance of a permit to build a motel in a single residence district in the city of Gloucester. The zoning ordinance of the city in authorizing the issuance of such permits required public hearings and evidence of compliance with requirements relating to public health and public safety. It was also specified:

"No permit [for a motel] shall be granted by the board of appeals without considering the effects upon the neighborhood and the city at large."

Pursuant to statutory authority owners of property in the area involved appealed to the superior court which held that the permit granted to the applicants therefore was invalid. After discussing the questions at issue such decree was reversed by the appellate court of the State, which held that the appeal board created by the zoning ordinance had not exceeded its authority and that the provision of the zoning ordinance involved was not invalid. Among other matters discussed was the claim that sufficient standards were not prescribed to guide the board of appeals in reaching a determination. In rejecting such claim it was said (p 118):

"The next question is whether the amendment sets up a sufficient standard to guide the board in granting or withholding permits. The only standard, other than building and land requirements, is that

'No permit shall be granted  *  *  *  without considering the effects upon the neighborhood and the city at large.'  In a somewhat analogous situation where a town by-law prohibited persons from removing soil, loam, sand, or gravel unless such removal was authorized by the board of selectmen we held that greater particularity was not required.  *Butler* v. *Town of East Bridgewater,* 330 Mass 33, 36, 37 (110 NE2d 922).  The degree of certainty with which standards for the exercise of discretion are set up must necessarily depend on the subject matter and the circumstances.  *Building Commissioner of Medford* v. *C. & H. Co.,* 319 Mass 273 (65 NE2d 537) ; *Butler* v. *Town of East Bridgewater, supra,* 37.  It would have been difficult, if not impossible, to specify in what circumstances permits should be granted and in what circumstances denied.  That would depend on numerous unforeseeable factors.  The board was charged with the quasi-judicial duty of considering the effect of the construction of a motel on the neighborhood and the city and to pass upon the application in each instance 'under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them.'  *Butler* v. *Town of East Bridgewater, supra,* 37.  We do not think that greater particularity was required.  *Sellors* v. *Town of Concord,* 329 Mass 259, 263, 264 (107 NE2d 784)."

*Lerner* v. *City of Delavan,* 203 Wis 32 (233 NW 608), involved an ordinance of the defendant city forbidding the keeping of a junk yard without first having obtained a permit so to do from the common council.  Holding that there was no question as to the power of the legislative body of the city to adopt a reasonable ordinance regulating the business in question, the court considered the issue as to the sufficiency thereof in prescribing standards that should be observed by the council, acting in an administrative capacity, with reference to the granting or

withholding of an application for a permit. It was said, in part (p 36):

"Does the ordinance in question vest in the common council a purely arbitrary power to grant and to revoke licenses for the carrying on of the junk business? It is concluded that it does not. The factors which the cases recognize as the proper bases for regulating junk yards are taken into account in the ordinance. It will be noted that the ordinance requires the person applying for the permit to give his name, the place where the business is to be carried on, and an enumeration of the articles and merchandise to be handled therein. It is fairly to be implied that there was no intention to vest an arbitrary power in the council, but that the ordinance gives to the council the power, and imposes upon it the duty, to consider and exercise its discretion with reference to those factors in the junk business which have made it a proper subject for special legislation. These factors are: The type of person who proposes to engage in the business, the character of goods that he proposes to handle, and the location of the business."

In support of the conclusion indicated the court cited with approval *City of Milwaukee* v. *Ruplinger,* 155 Wis 391 (145 NW 42).

We think the foregoing cases fairly indicate the principle of law to be applied in a determination of the controversy now before us. The legislative body of Detroit, in the enactment of section 17.1(3) of the municipal zoning ordinance, expressly indicated certain standards that should be observed by the plan commission in passing on applications under the provision in question. Clearly it was intended that the commission should proceed to determine whether the operation of the business sought to be carried on by virtue of a required permit would injuriously affect other properties and the owners

and occupants thereof within the immediate district. This involved consideration of the inherent nature of the proposed business, the means of operation thereof, the extent of operations contemplated, and other pertinent facts. Likewise, the requirement of a finding that any such business, in order to be approved, will be operated in accord with the general purpose and intent of the zoning ordinance necessitates careful consideration of the intended project and whether it will tend to serve the general welfare of the community or result to the prejudice thereof. Such standards are not inherently vague and uncertain but obviously require the ascertainment of facts and a determination as to whether the application shall be approved in accordance therewith.

The nature and extent of the standards required to be followed were primarily for the determination of the legislative body of the city in the enactment of the zoning ordinance. Presumptively that body concluded that the standards indicated would prove sufficient for the proper guidance of the commission. In this respect the Court may not properly substitute its judgment for that of the common council. The case is not one in which no standards were fixed. On the contrary, it is clear that the intent of the ordinance provision was that the commission should ascertain the existence or nonexistence of particular facts justifying the action taken with reference to the approval of the use specified in the application.

Decisions based on the failure to prescribe any standards whatever, in the granting of legislative authority with reference to matters of the character here involved, in accordance with which an administrative officer or commission should ascertain and determine facts deemed to be vital to the exercise of delegated power are not in point. Such was the problem with which this Court was confronted in *Osius* v. *City of St. Clair Shores,* 344 Mich 693 (58

ALR2d 1079), which counsel for plaintiff have cited. For analogous reasons the case of *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake*, 333 Mich 389, likewise cited, has no relevance to the issue here presented. It is our conclusion that the holding of the circuit judge that section 17.1(3) is unconstitutional is not in accord with applicable principles governing the controversy before us and that, in consequence, the decree entered in circuit court must be reversed.

If, as we hold, the plan commission had authority under the zoning ordinance of Detroit to act on the application of the plaintiffs and to render therein a determination based on its factual findings as above set forth, the proper method of review by the circuit court was by way of certiorari rather than by suit in equity. In the instant case the proof introduced before the commission, the conclusions of that body, and the reasons given for the rejection of the application made by the plaintiffs, were not considered. The equity suit proceeded on the basis of an assumption that the court was vested with authority to determine whether on the law and the facts plaintiffs were entitled to have their application approved. In view of our holding that the plan commission had authority to act, it must be held that the court of equity proceeded improperly in ordering the issuance of a permit and in granting the injunctive relief decreed.

The case is remanded to the circuit court with directions to set aside the decree entered and to dismiss the bill of complaint. In view of the nature of the questions involved, no costs are allowed.

Dethmers, Kelly, Black, Kavanagh, Souris, Otis M. Smith, and O'Hara, JJ., concurred.