WHITTAKER & GOODING CO v SCIO TOWNSHIP

Docket No. 63134. Submitted November 4, 1982, at Lansing.—Decided January 19, 1983. Leave to appeal applied for.

Whittaker & Gooding Company (W & G) had been removing gravel from a site in Scio Township for several years when it filed an application with the township for a conditional use permit for removal of sand and gravel from two sites adjacent to their existing operation. The three sites were zoned General Agricultural Districts and abutted a subdivision containing single-family homes. The township board denied W & G's application for a permit, finding that extension of the gravel operation would be detrimental to nearby residents who actively opposed the grant of a permit. The township board also noted that W & G's existing operation was in violation of the township zoning ordinance because no permit had been obtained to mine the gravel and that W & G had failed to properly respond to citizens' numerous past complaints concerning W & G's operation. W & G appealed the denial of the permit to the Scio Township Zoning Board of Appeals. The board of appeals granted W & G's conditional use permit subject to certain conditions, including imposition of a five-year time limit, expiring June 31, 1982, on the operation and requirement that the final grade level of such operation be at least 15 feet above the water table. W & G then filed suit against the township, the zoning board of appeals and the Scio Township Planning Commission in Washtenaw Circuit Court, challenging the board of appeals restriction on its operation and the five-year limitation on recovery of the gravel. The court, William F. Ager, Jr., J., held that the five-year limitation was a reasonable decision and based upon material evidence, but held that W & G should be given one year beyond the five-year period to rehabilitate the land. W & G appeals. *Held:*

1. The zoning board of appeals did not err in imposing a five-year time limit on the conditional use permit and the circuit

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Zoning and Planning § 281.

court did not err in upholding the action of the board of appeals in imposing the limitation.

2. The zoning board of appeals decision to limit W & G's operations to five years and to require a rehabilitated grade level not less than 15 feet above the water table is supported by competent, material, and substantial evidence on the record.

3. The Scio Township ordinance under which the permit was granted and the restrictions imposed are not so vague as to be fatally defective for lack of standards.

Affirmed.

1. ZONING — CONDITIONAL USE PERMITS — TIME LIMITATIONS.

A time limitation may be imposed on a conditional use permit granted by a township zoning board where the proposed use is temporary in nature at the outset and where there is a strong desire on the part of the surrounding community to limit the activity to a definite known period of time.

2. ZONING — CONDITIONAL USES — VARIANCES.

General zoning ordinances must be definite to avoid being fatally vague for lack of standards; provisions pertaining to a conditional use or a variance, however, must of necessity be broad and permit an exercise of discretion since they are designed to relieve against uncertain eventualities.

*Leonard K. Kitchen, Clan Crawford, Jr., T. John Lesinski,* and *Bruce T. Leitman,* for plaintiff.

*Reading & Etter* (by *Douglas Reading),* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and R. L. TAHVONEN,* JJ.

ALLEN, J. Did the zoning board of appeals of defendant township, in granting a conditional use permit to plaintiff for mining sand and gravel, err in imposing a five-year time limit, expiring June 31, 1982, on such operation and by requiring that the final grade level of such operation be at least 15 feet above the water table? In an opinion dated

---

* Circuit judge, sitting on the Court of Appeals by assignment.

January 27, 1982, and order pursuant thereto entered February 25, 1982, the circuit court for Washtenaw County sustained the five-year time and grade level limitations and added an additional year for site rehabilitation to be completed by June 30, 1983. From the order of the trial court, plaintiff appeals as of right.

On December 8, 1975, plaintiff filed an application with defendant Scio Township for a conditional use permit for removal of sand and gravel from a 9.67-acre parcel (the "Baldus property") and a 48.01-acre parcel (the "Ehnis property") in Scio Township. Plaintiff had been removing gravel from an adjoining 127.67-acre parcel (the "Dunstan property") for 10 or 15 years. Plaintiff's parcels are zoned General Agricultural District A-1, in which the removal of sand and gravel is permitted only as a conditional use. The Baldus-Ehnis-Dunstan properties adjoin the westerly boundary of Loch Alpine Subdivision, zoned Residental District R-1B. It was platted in the mid-1920's, and by April, 1960, included 48 single-family homes. By 1977, Loch Alpine contained 165 single-family homes.

On September 20, 1976, the Scio Township Board denied plaintiff's application for a permit, finding that extension of the gravel operation would be detrimental to nearby residents who actively opposed the grant of a permit because of excessive noise, vibration, and dust in the general vicinity, as well as heavy truck traffic and sand and stones dropped on public roads. The township also noted that plaintiff's present Dunstan operation was in violation of the Scio Township zoning ordinance because no permit had been obtained and that plaintiff had failed to properly respond to citizens' numerous past complaints about unlawful

hours of operation, failure to restrict hauling to designated haul routes, failure to fence as required by township ordinances, and excessive noise.

Plaintiff appealed the township's denial of their permit application to the Scio Township Zoning Board of Appeals. The zoning board of appeals granted plaintiff's conditional use permit subject to certain conditions, including the five-year time limitation on plaintiff's operation and progressive rehabilitation of the land, including the previously mined Dunstan property.

Plaintiff next brought this action in the Washtenaw County Circuit Court, challenging the zoning board of appeals restrictions on its operations and the five-year limitation on recovery of the gravel. By opinion dated January 27, 1982, the circuit court held that the five-year limitation was a reasonable decision and based upon material evidence, but held that plaintiff should be given one year beyond the five-year period to rehabilitate the land.[1]

In its briefs on appeal, plaintiff raised two grounds for reversal: (1) the zoning board of appeals decision to limit plaintiff's mining operation to five years and to require a rehabilitated grade level not less than 15 feet above the water table are not supported by competent, material, and substantial evidence on the record as required by the Township Rural Zoning Act, MCL 125.293a;

[1] Plaintiff's amended complaint contained a claim under the Michigan Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.* It should be noted, although not part of this appeal, that defendant moved for partial summary judgment against plaintiff's EPA claim for failure to state a claim upon which relief could be granted. The circuit court granted defendant's motion. Plaintiff appealed from the partial summary judgment order to this Court. By published opinion released June 8, 1982, this Court affirmed the circuit court's order. *Whittaker & Gooding Co v Scio Twp,* 117 Mich App 18; 323 NW2d 574 (1982). On June 29, 1982, plaintiff filed a delayed application for leave to appeal to the Supreme Court.

MSA 5.2963(23a), and (2) even if supported by competent, material, and substantial evidence, the five-year time limitation is prohibited by this Court's decision in *Room & Board Homes & Family Care Homes, Operators & Owners v Mayor of Detroit,* 67 Mich App 381; 241 NW2d 216 (1976). We address the issues in inverse order. At oral argument, plaintiff raised a third ground for reversal. This third issue will be discussed later.

I

*Is* Room & Board Homes v Mayor of Detroit *controlling, thereby making a time limitation an impermissible restriction?*

In *Room & Board Homes,* the Zoning Board of Appeals of the City of Detroit sought to impose a time limitation (period of years) during which an existing building, proposed to be converted into an adult foster care facility, could be operated as an adult foster care facility. Conversion of existing buildings for such purposes was authorized under § 62.0402 of the zoning ordinance providing for "special exceptions". Under that section, the zoning board was empowered to "impose such conditions and safeguards as it deems necessary to carry out the intent, spirit, and purposes of this ordinance". Defendants Mayor of Detroit and zoning board of appeals argued that, since it was difficult to determine whether converting property to an adult foster care facility would have an injurious effect on the neighborhood, such use should only be allowed for a limited period of years. Plaintiffs, owners and operators of adult foster care facilities in the City of Detroit, argued that nothing in the ordinance gave the zoning board of appeals the authority to impose a time

limitation. The trial court held in favor of plaintiffs. On appeal, this Court affirmed, saying:

"The question to be answered in the present case is whether the Board of Zoning Appeals can place a time limitation on a 'special exception' under its authorized power to 'impose such condition and safeguards as it deems necessary to carry out the intent, spirit and purpose of this Ordinance'. The board *may not impose conditions unrelated to the use of the land.* 3 Anderson, American Law of Zoning, § 15.31, p 161. Moreover, it must be kept in mind that a 'special exception' does not vary the ordinance but permits certain uses authorized under stated conditions in the ordinance. We are not talking, therefore, about a use otherwise proscribed by the ordinance. Thus, once the board has determined that a use qualifies under the ordinance as a 'special exception' and conditions related to the use of the land are imposed, that use cannot be subject to a time limitation." 67 Mich App 384-385. (Emphasis supplied.)

The Scio Township zoning ordinance does not per se authorize a time limitation as a condition which may be imposed in granting a conditional use. However, art 6, § 6.08 of the township ordinance expressly authorizes the imposition of "conditions as it deems necessary to protect the public interest of the Township and the surrounding property". In this respect the language of the township ordinance is similar to the language of the City of Detroit zoning ordinance in *Room & Board Homes.* The fact that the township ordinance concerns "a conditional use" and the city ordinance concerned "a special permit" or "special exception" is immaterial. In modern zoning law the terms are virtually synonymous.[2]

---

[2] "And .it has been held that the terms 'special exception' and 'special permit' are synonymous with the term 'conditional use', the latter having replaced the term 'special exception' in most modern zoning ordinances." 3 Rathkopf, The Law of Zoning and Planning, § 41.02, p 41-8.

Defendant argues that *Room & Board Homes* is distinguishable because there the foster care home was a permanent use whereas a gravel operation is inherently temporary in nature. The company president acknowledged as much when he testified: "By the very nature of the business you begin to go out of business at any deposit location from the day you remove the first shovelfull." Plaintiff argues that the distinction in meaningless since, under the holding in *Room & Board,* once a use qualifies as a special exception, the use cannot be subject to a time limitation. In our opinion, the policy considerations justifying a time limitation, when applied to a permanent use such as an adult foster care home, are much more compelling than where the proposed use is temporary in nature at the outset and where there is a strong desire on the part of the surrounding community to limit the activity to a definite known period of time. Further, a limitation on the length of time one may extract sand and gravel from the ground is definitely related to the use of the land, whereas limitation on the use of a building already constructed on the land is a limitation on the use of the building. See Striar and Etter, *Local Government,* 23 Wayne L Rev 765, 810 (1977).

Furthermore, though the cases are sparse and the limitation imposed is measured in days rather than years, courts in other jurisdictions decline to treat as automatically invalid a limitation in time.

"In cases where the grant of the exception or variance is within the zoning board's discretion, but is assailed as an abuse of discretion by reason of the board's alleged failure to protect the interests of other landowners, the imposition of limitations on hours *or days of operation* has been relied on by the court as demonstrating that the zoning board properly consid-

ered the interests of other landowners and acted within its discretion in granting the exception or variance.

* * *

"In some cases an applicant who has been successful in securing a variance or exception from a zoning board contests the board's attaching conditions to the variance or exception so as to restrict hours *or days of operation. The validity of such conditions appears to turn on the particular circumstances.*" (Emphasis supplied.) Anno: *Imposing Restriction as to Hours or Days of Operation of Business as Condition of Allowance of Special Zoning Exception or Variance,* 99 ALR2d 227, §§ 3, 4, pp 228, 229.

For all of the foregoing reasons, we decline to extend *Room & Board* to the situation in the instant case.

## II

*Is the zoning board of appeals decision to limit plaintiff's operations to five years and to require a rehabilitated grade level not less than 15 feet above the water table supported by competent, material, and substantial evidence on the record?*

The main thrust of plaintiff's brief is that the decision to limit plaintiff's operation to five years and to require a rehabilitated grade level of a certain depth is not supported by competent, material, and substantial evidence on the record as required by the Township Rural Zoning Act. That statute provides:

"(1) The decision of the board of appeals rendered pursuant to section 23 shall be final. However, a person having an interest affected by the zoning ordinance may appeal to the circuit court. Upon appeal the circuit court shall review the record and decision of the board of appeals to insure that the decision:

"(a) Complies with the constitution and laws of the state.

"(b) Is based upon proper procedure.

"(c) Is supported by competent, material, and substantial evidence on the record.

"(d) Represents the reasonable exercise of discretion granted by law to the board of appeals.

"(2) If the court finds the record of the board of appeals inadequate to make the review required by this section, or that there is additional evidence which is material and with good reason was not presented to the board of appeals, the court shall order further proceedings before the board of appeals on conditions which the court considers proper. The board of appeals may modify its findings and decision as a result of the new proceedings, or may affirm its original decision. The supplementary record and decision shall be filed with the court.

"(3) As a result of the review required by this section, the court may affirm, reverse, or modify the decision of the board of appeals." MCL 125.293a; MSA 5.2963(23a).

Plaintiff repeatedly argues that the record is devoid of any representation or other kind of evidence that the operation could be completed in five years under the restrictions imposed in the permit. Prior to February 2, 1977, the date on which the zoning board of appeals granted the permit, all testimony was that operations could be completed within a five- to ten-year period. On April 13, 1976, the company president informed the township planning commission that the company's "proposed schedule of operations would cover a period of approximately seven years to remove the gravel deposit and rehabilitate the properties under consideration". On September 20, 1976, the township denied the conditional use permit. Paragraph 4 of the findings of fact contained in the board's order of refusal refers to the five-year period for excavation:

"If granted the conditional use permit, the applicant intends to acquire ownership of the Dunstan and Baldus-Ehnis properties and continue the Dunstan operation northward into the Baldus-Ehnis property. *The applicant estimates that the usable sand and gravel of the properties could be depleted and the operation completed in five years, although applicant considers ten years to be a more realistic estimate.*" (Emphasis supplied.)

Two days after the township board's denial of the permit, plaintiff applied to the zoning board of appeals. Plaintiff's application did not contain a suggested time period for the life of the permit. Some seven or more hearings were held by the board of appeals, at which complaints were heard from neighboring citizens and extensive testimony was taken. On October 13, 1976, the company attorney, responding to a request from Emil Jebe, chairman of the board of appeals, wrote to the board of appeals stating, *inter alia:*

"* * * The following circumstances, many of which were also considered in *Salem Township,* when fully analyzed, support the finding of a reasonable use in this case: (a) scarcity of natural resource and its definite need, as fully documented, (b) the proposed use fully complies with all ordinance conditions, (c) *the use is not a perpetual use, but will be self-extinguishing within approximately five to ten years.*" (Emphasis supplied.)

At the December 9, 1976, meeting, Chairman Jebe stated that "he believes five years will be a reasonable balance between the desires of the residents and the long range goals of Scio Township". Commissioner Rupert responded that he did not agree since he understood the company had stated it needed a minimum of seven years, and better, ten years. Minutes of the board of appeals

meeting for December 9, 1976, reflect that Chairman Jebe responded as follows:

"Mr. Jebe responded that the record shows in at least two places that the applicant said five years, although he has said at other times that he would prefer seven to ten. There are 134 acres on the Dunstan farm. Allowing for the house, etc., Whittaker & Gooding has moved over 100 acres of material in about ten years, which is approximately ten acres per year. The proposed Baldus and Ehnis area is 57.68 acres. Take off 100 feet for the border according to the ordinance, which is 12 acres, that leaves 45 acres. If they remove nine acres per year, that would be comparable to what they did in the Dunstan pit. Mr. Jebe said he does hold that a certain time limit is possible."

On January 27, 1977, plaintiff was shown a proposed conditional use permit with a five-year limitation period. Charles Gooding, company president, immediately took issue with the limitation, stating that seven years was the minimum. Nevertheless, at its February 2, 1977, meeting, the board of appeals, by a vote of four to one, granted a conditional use permit subject to a five-year completion period. On February 9, 1977, Charles Gooding again appeared before the board of appeals and at considerable length explained why plaintiff could not meet the five-year limitation. He stated that company engineers estimated there were 4-1/2 million tons of recoverable aggregate; that during the past five years of operation the average rate of removal was 600,000 tons; that at full rate of production it would take 7-1/2 years to deplete the deposit, but with the other many restrictions imposed by the township relating to hours of work plus the requirement imposed for rehabilitation, ten years would be required to permit full recovery of the available aggregate. Notwithstanding

plaintiff's protestations, a conditional use permit was issued for a period of only five years.

Given the above chronology of events and statements made, we cannot say that the record is devoid of *any* representation or evidence that operations including rehabilitation could be completed within a five-year period. On at least two occasions, the five-year period was mentioned by the company. In addition, the December 9th minutes reflect a logical basis for the five-year limitation. However, it does appear that the longer deliberations dragged on, particularly at the appeal board level, the more the plaintiff shifted from a five- or seven-year period to a ten-year period. While there is testimony which supports the five-year period, a greater quantum of evidence supports a ten-year period. Nevertheless, given the conflicting testimony, we cannot conclude that the appeal board's decision (as modified by the trial court) was without record support.

Assuming, *arguendo,* that there was insufficient evidence on the record to show that, given the limitations imposed on plaintiff, the underlying sand and gravel could be totally excavated within five years, it does not necessarily follow that error occurred. The decision of the board of appeals was made pursuant to the Scio Township Zoning Ordinance. Under the ordinance, the board of appeals could not look solely at the interests of the company, but was required to balance the petitioner's interests with the interests of the community. The ordinance, which specifically mandates that the grant of the requested use be compatible with the "existing or *intended* character of the township", reads as follows:

"Section 6.08 Required Standards and Findings.

"The Planning Commission and Township Board shall review the particular circumstances and facts of each proposed use in terms of the following standards and required findings, and shall find and record adequate data, information and evidence showing that such a use on the proposed site, lot or parcel meets the following standards:

"A. Will be harmonious, and in accordance with the objectives and regulations of this Ordinance.

"B. Will be designed, constructed, operated, *maintained, and managed so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity.*

"C. That the proposed use will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage ways, refuse disposal, or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such service.

"D. That the proposed use *will not be detrimental, hazardous, or disturbing to existing or future neighboring uses, persons, property or the public welfare.*

"E. That the proposed use will not create additional requirements at public cost for public facilities and services that will be detrimental to the economic welfare of the community.

*"If the facts do not establish that the findings and standards set forth in this Ordinance will apply to the proposed use, the Township Board shall not grant a conditional use permit. In granting of any conditional use permit the Township Board shall impose such conditions as it deems necessary to protect the public interest of the Township and the surrounding property, and to achieve the objectives of this Ordinance.* The breach of any such condition of safeguard shall be considered a violation of this Ordinance." (Emphasis supplied.)

The primary factor weighing against granting the permit was the opposition of many residents of the neighboring Loch Alpine Subdivision and other

residents of the township who voiced their opposition to granting the permit application either individually or through the Scio Citizens' Committee and the Loch Alpine Improvement Association. The zoning board minutes of November 4, 1976, show 416 signatures of protesting citizens. Their complaints mentioned, *inter alia:* the allegation that the gravel pit was not harmonious with the surrounding area; excessive noise and dust from the operation; noise and traffic of large trucks and resulting stones on roads; reduction in the value of homes; excavation close to property lines of homes; lack of fencing; and the allegation that the gravel pit was an attractive nuisance for children. These complaints are contained in the zoning board minutes of October 28, 1976, November 4, 1976, December 2, 1976, December 9, 1976, and February 2, 1977.

A second consideration favoring the grant of a permit was the opportunity to force plaintiff to rehabilitate the nearly exhausted Dunstan property as a condition to granting the permit to extract gravel from the Ehnis-Baldus property. According to the zoning board minutes of December 9, 1976, if a permit was not granted, the Dunstan property would not be rehabilitated.

A third factor favoring the grant of the permit was plaintiff's interest in extracting the gravel and the larger community interest in mining a natural resource that is in substantial demand.

The balancing of these three considerations can be seen throughout the board's deliberation and in its order granting the limited permit. These considerations were clearly at the heart of Chairman Jebe's proposal that the permit end after five years. Again we refer to the minutes of the December 9, 1976, meeting:

"Mr. Jebe responded by saying that we need to accomplish a sense of balance. There are certain things the board would like to accomplish and by going the permit route, the township would have a contract with the applicant and a list of things the applicant has said he will do. The board wants to remove a legal nonconforming use from a location where the use is not wanted. The board wants to rehabilitate both the new area and the Dunstan farm. The application does not mention the Dunstan farm, but the applicant has said he will also include the Dunstan area in his rehabilitation plan. We are concerned about the citizen complaints and Mr. Jebe concluded that the operation should not continue more than five years from the beginning of its operation. He hopes (by a temporary disturbance) to accomplish a reasonable balance between (1) allowing the applicant to recover his resource and (2) the wishes of the residents. The actual proposed area of removal is farther away from Loch Alpine than previous work areas and there may be ways to quiet the processing plant. Mr. Jebe said he believes five years will be a reasonable balance between the desires of the residents and the long range goals of Scio Township."

In summary, the relevant question is not whether the record supports a finding that the operation could be completed in five years under the restrictions imposed in the permit, but whether the record contains testimony and other evidence that supports the board's balancing of interests (as required by ordinance) between the plaintiff's request for ten years and the neighborhood residents' demand that no permit be issued. The mid-point between the company's initial estimate of five to ten years for completion including rehabilitation is seven and one-half years. The board granted five years and the circuit court granted an extra year. In our opinion, the decision to place a five-year time limitation on plaintiff's operation, as extended by one year by the circuit

court, was a reasonable exercise of discretion and is supported by competent, material, and substantial evidence on the record.

We also reject plaintiff's argument that the requirement that the rehabilitated grade be not less than 15 feet above the water table is not supported by the evidence. We do agree that it is not supported by anything in the topographical map introduced into evidence as Exhibit A. However, it is more than adequately supported by other testimony.

At the January 19, 1977, zoning board business meeting, Chairman Jebe proposed that the final grade of the property be not less than 20 feet above the ground water table. This figure apparently came from a ground work paper by board member Wood, as evidenced by the zoning board minutes of February 2, 1977. At the next meeting, plaintiff's geologist, Glen Miller, stated that plaintiff would like the final grade to be ten feet above the water line. The zoning board minutes of January 27, 1977, show that this proposal provoked questions, either from board members or from members of the audience, about whether this depth could accommodate future sewer lines. At the following meeting, Mr. Poiner, who lived near the gravel pit, asked for a discussion of the ten-foot final grade proposal. According to the zoning board minutes of February 2, 1977, he objected to plaintiff's proposal, noting that a home with a seven- or eight-foot basement plus foundation would be in the water table. Bill Petring, another member of the audience, opposed the ten-foot grade because of possible problems with normal variations in the ground water table. Chairman Jebe requested that plaintiff's attorney take these concerns back to plaintiff and asked for a response

from plaintiff. At the February 9, 1977, meeting, the board members voted four to one to reduce the final grade from 20 feet to 15 feet above the water table.

Based on this record, the zoning board exercised reasonable discretion in requiring that the final rehabilitated grade be at least 15 feet above the water table. The stated purpose of the permit was to allow expeditious removal of the gravel "while simultaneously achieving the site's reclamation as useable land in harmony, and in keeping with the intended character of the general vicinity". Plaintiff's argument that the 15-foot final grade is not supported by competent, material, and substantial evidence on the record is without merit.

### III

*Is § 6.08 of the ordinance invalid for lack of standards?*

A third issue, first raised by appellate counsel for plaintiff at oral argument, merits consideration. Counsel argued that the power given the township in granting a conditional use, to "impose such conditions as it deems necessary", is invalid by reason of lack of standards. The language of the ordinance to which counsel referred, reads:

"In granting of any conditional use permit the Township Board shall impose such conditions as it deems necessary to protect the public interest of the Township and the surrounding property, and to achieve the objectives of this Ordinance."

The legal question presented is the sufficiency of the standards required in ordinances involving the grant of a conditional use. This question is dis-

cussed at length in 3 Rathkopf, The Law of Zoning and Planning, § 41.09, p 41-36. The great majority of jurisdictions find generalized standards sufficient where the grant involved is a conditional use.

"It will be found that generalized standards are acceptable in most jurisdictions. The purpose of the special exception-conditional use technique is to confer a degree of flexibility in .the land use regulations. This would be lost if detailed standards covering each specific situation in which the use is to be granted or, conversely, each situation in which it is to be denied, were required to be placed in the ordinance. The difficulty of so doing was noted by a California court which pointed out that if it were possible to find a legislative draftsman capable of performing such a task—of drafting standards to govern the likely as well as all possible contingencies relating to a conditional use—there would be no need to make the use a conditional one. In that case they could be made part of the zoning ordinance proper requiring no exercise of discretion on the part of anyone. The court concluded by stating that the use of general standards was a necessity: 'All of which goes to point up our belief that if the purposes of zoning are to be accomplished, the master zoning restrictions or standards must be definite while the provisions pertaining to a conditional use or a variance, designed to relieve against uncertain eventualities, must of necessity be broad and permit an exercise of discretion.' " (Footnotes omitted.)

The following generalized standards in local ordinances have been found sufficient to guide boards in granting or withholding a conditional or special use permit: "determine [and vary the application of the use district regulations] in harmony with their general purpose and intent" (Holy Sepulchre Cemetery v Town of Greece, 191 Misc 241, 246; 79 NYS2d 683 [1947]); "will not interfere with

the general purposes for which the Flood Plain districts have been established and will not be detrimental to the public health, safety or welfare" *(Turnpike Realty Co, Inc v Town of Dedham,* 362 Mass 221, 225; 284 NE2d 891 [1972]); "not injurious to the surrounding neighborhood and not contrary to the spirit and purpose of this ordinance" *(Florka v City of Detroit,* 369 Mich 568, 570; 120 NW2d 797 [1963]); "may recommend conditions be attached which it (Board of Adjustment) finds are necessary to carry out the purpose of this ordinance" *(Schultz v Board of Adjustment of Pottawattamie County,* 258 Iowa 804, 809; 139 NW2d 448 [1966]). Of course, if the Scio Township ordinance had provided no more than that the board "shall impose such conditions as it deems necessary", the ordinance would be fatally defective for lack of standards. However, the ordinance is not so vague. The language "to protect the public interest of the Township and the surrounding property, and to achieve the objectives of this Ordinance" is added. Further, the purposes of the ordinance are spelled out in detail in the eight subsections of § 1.03. We find § 6.08 of the Scio Township ordinance no less specific than the comparable sections of ordinances found sufficient in *Florka, supra,* and in the other cases cited above.[3] Accordingly, we reject the argument that the ordinance is invalid for want of standards.

Affirmed.

---

[3] Noting that there is a trend toward a more liberal construction of standards, see *Ours Properties, Inc v Ley,* 198 Va 848; 96 SE2d 754 (1957), and 3 Anderson, American Law of Zoning, § 19.09, p 378.